**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-CV00285-CMA-NRN

NICOLAS DONEZ,

       Plaintiff,

v.

LEPRINO FOODS, COMPANY, a Colorado
corporation

       Defendant.

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
PURSUANT TO FED.R.CIV.P. 56**

---

Defendant Leprino Foods Company ("Company" or "Leprino Foods"), through its undersigned counsel, William C. Brittan and Margaret R. Pflueger, of the law firm of Campbell Killin Brittan & Ray, LLC, pursuant to Fed.R.Civ.P. 56, moves for summary judgment on Plaintiff's claims for Race Discrimination in Violation of Title VII and Wrongful Termination in Violation of Public Policy, and as grounds therefore, states as follows:

## SUMMARY OF ARGUMENT

This case involves a fight between Plaintiff and another employee, Frank Levar (Caucasian), at the Company's Fort Morgan plant. Afterwards, Leprino Foods terminated the employment of both participants for violating Leprino Foods' Workplace Security Policy, (also known as its "Workplace Violence Policy").

Plaintiff alleges (without sufficient support) that his discharge was based on discrimination due to his race, retaliation for filing a workers' compensation claim, and his purportedly acting in

self-defense during the altercation.  Even interpreting the allegations in favor of the Plaintiff, his claims must be dismissed as a matter of law for the simple reason that Plaintiff has no evidence to support them.  There is no evidence to support a finding Leprino Foods had a discriminatory intent when terminating Plaintiff's employment for violation of the company's Workplace Violence Policy or was retaliating due to his filing a claim for workers' compensation related to his injuries suffered in the fight and despite his assertion he was acting in self-defense.

To the contrary, Plaintiff admits he pushed Mr. Levar even when he could have exited the vicinity and de-escalated the situation.  Plaintiff cannot dispute that prior to Leprino Foods making the final decision regarding Plaintiff's employment status, the Company learned from the Fort Morgan Police Department that Plaintiff admitted he physically participated in the altercation by pushing Mr. Levar. Based on this information, and its own additional investigation, Leprino Foods determined Plaintiff was an active participant in the altercation with Mr. Levar, thereby violating Company policy and warranting discharge.  (Mr. Levar, a similarly situated Caucasian, was also terminated as a result of this incident.)

These facts also undermine Plaintiff's claim that he was terminated for filing a workers' compensation claim.  In fact, Plaintiff admits that Leprino Foods actually facilitated his receipt of workers' compensation benefits by providing the necessary paperwork on the same day he was injured. Moreover, of the over sixty-nine (69) Leprino Foods' employees who filed for workers' compensation from 2012 to 2017 only two (2) were terminated within four months of submitting a claim – Plaintiff and another employee who violated Defendant's "lock out/tag out" rule.

Plaintiff has asserted no facts that undermine Leprino Foods' valid, non-discriminatory and non-retaliatory reason for terminating Plaintiff's employment.  Further,  under applicable federal

law, the relevant inquiry is not whether Leprino Foods' proffered reasons for terminating Plaintiff's employment were wise, fair, or correct, but whether Leprino Foods honestly believed those reasons and acted in good faith upon those beliefs. *See Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004). The undisputed facts confirm Leprino Foods had a legitimate, non-discriminatory and non-retaliatory basis for terminating Plaintiff's employment – his involvement in a workplace altercation - and Plaintiff is unable to identify any evidence from which a reasonable jury could rationally find that his race and/or his filing for workers compensation motivated his termination.

Accordingly, Leprino Foods is entitled to summary judgment as a matter of law on Plaintiff's claims for race discrimination and wrongful termination in violation of public policy.

## RELEVANT FACTUAL BACKGROUND

### A.    Leprino Foods

1.      Leprino Foods is a privately held corporation headquartered in Colorado, which manufactures cheese and dairy-related products. *See* Leprino Foods' Appendix ("LF App.", p. 1- Affidavit of Steve Schmidt ("Schmidt Aff.") at ¶ 3.

2.      Leprino Foods has nine separate manufacturing facilities located across the United States.  LF App., p. 1- Schmidt Aff. at ¶ 4.

3.      The Fort Morgan facility is one of Leprino Foods' manufacturing plants. LF App., p. 1- Schmidt Aff. at ¶ 5.

4.      Leprino Foods employs over 300 individuals at its Fort Morgan facility, an average of 40% of which self-identified as Hispanic between 2012 to the present.  LF App., p. 1- Schmidt Aff. at ¶ 6.

5.    Pursuant to Leprino Foods' Standards of Ethics and Business Practices, Leprino Foods promotes equal opportunity and prohibits unlawful discrimination or harassment in the workplace based on any reason, including race. LF App., pgs. 1&2- Schmidt Aff. at ¶ 7.

6.    Leprino Foods also promotes a safe and respectful workplace for its employees, and believes it is extremely important to address incidents of workplace violence. LF App., p. 2- Schmidt Aff. at ¶ 8.  With this goal in mind, Leprino Foods adopted its Workplace Security Policy (*i.e.* Workplace Violence Policy).  LF App., p. 2- Schmidt Aff. at ¶ 8; LF App., pgs. 4-11 - Leprino Foods' Workplace Security Policy.

7.    Leprino Foods provides training to its employees regarding its Workplace Violence Policy.  LF App., p. 13- excerpts from the November 6, 2019 Deposition of Risa Esterly ("Esterly Dep.") at 26:16-27:23

**B.    Plaintiff Nicolas Donez**

8.    Plaintiff Nicolas Donez was hired by Leprino Foods on November 3, 1998 for the position of bagger in the Whey Department.  LF App., p. 2- Schmidt Aff. at ¶ 9; LF App., p. 25 - excerpts from the August 26, 2019 Deposition of Nicolas Donez "Donez Dep." at 31:9-15.

9.    Plaintiff admits that, during his employment at Leprino Foods, he was aware Leprino had a policy which did not tolerate intimidation, harassment or fighting at the workplace. LF App., p. 31 - Donez Dep. at 99:3-100:9.

10.    On at least one occasion during his employment, Plaintiff was disciplined, but not terminated, for violating Company policies.  Specifically, Plaintiff was reprimanded and given a written warning in connection with an incident involving a verbal altercation with a co-worker during which Plaintiff used inappropriate language.  LF App., p. 32 - Employee Warning Record.

11.     After approximately 10 years on the job, on or about 2008, Plaintiff was promoted by Leprino Foods to the position of Foreperson of the Whey Department at the Fort Morgan plant. LF App., p. 2- Schmidt Aff. at ¶ 10.

12.     Plaintiff worked as a Foreperson from 2008 until his termination on February 29, 2016. LF App., p. 2- Schmidt Aff. at ¶ 11.

### C.     The February 9, 2016 Altercation

13.     On February 9, 2016, Plaintiff was acting as both Foreperson and Supervisor in the Whey Department because there was no Supervisor on duty on the shift. LF App., pgs. 26&27 - Donez Dep. at 40:5-41:18; pgs. 28&29 - 76:6-77:13.

14.     At some point during the shift, Plaintiff got into an altercation with his co-worker Frank Levar. LF App., pgs. 14&15 - Esterly Dep. at 36:9-38:5; LF App., p. 33 - Plaintiff's written statement; LF App., p. 34 - Mr. Levar's written statement.

15.     There were no other eyewitnesses to the altercation, but records from the investigations conducted by Leprino Foods and the Fort Morgan Police Department confirm that Plaintiff and Mr. Levar got into a shoving match and Mr. Levar then punched Plaintiff, knocking him out. LF App., pgs. 35&36 - Affidavit of Commander Loren Sharp ("Sharp Aff.") at ¶¶ 2-6; LF App. p. 34 – Mr. Levar's written statement; LF App., pgs. 37&38 - Affidavit of Kensi Mays ("Mays Aff.") at ¶¶ 3-5 and Exhibit A thereto LF App., p. 39 (hyperlinks to snippets of police audio recordings provided by Fort Morgan Police Department).[1]

---

[1] A USB containing copies of the snippets of police audio recordings identified herein was hand delivered to this Court and FedEx shipped to opposing counsel on the same date this Motion was filed.

16.     When Mr. Levar moved Plaintiff back, rather than walk away, Plaintiff pushed him, thereby escalating the altercation. LF App., p. 34 - Mr. Levar's written statement; LF App., pgs. 35&36 - Sharp Aff.; LF App., p. 39 - Mays Aff. at Exhibit A thereto (hyperlinks to snippets of police audio recordings); LF App. pgs. 82-83, police report #2.

17.     Plaintiff was taken to the hospital from the scene.  LF App., p. 81- police report #2.

18.     Subsequent to the incident, the Fort Morgan's Human Resources Department also conducted its own investigation of the incident. LF App., p. 19 - Esterly Dep. at 55:6-17.  As part of this investigation, it obtained statements from Plaintiff and Mr. Levar.  LF App., p. 33 - Plaintiff's written statement; LF App., p. 34 - Mr. Levar's written statement; LF App., pgs. 15&16 and p. 21 - Esterly Dep. at 40:16-41:22; 61:15-62:8.

19.     The Fort Morgan Police Department was notified about the incident and initiated an investigation, headed by Detective Steve Vossberg.  LF App., p. 35 – Sharp Aff.; LF App. pgs. 81-84 – police report #2.

20.     In an interview he gave to Detective Vossberg at the hospital shortly after the incident, Plaintiff twice admitted shoving Mr. Levar during the altercation. LF App., p. 82-83 police report #2; LF App., p. 39 hyperlink to Recording Snippet 1 and hyperlink to Recording Snippet 2.

21.     On February 10, 2019, Detective Vossberg spoke with Risa Esterly, the Human Resources Manager at the Fort Morgan Plant, and relayed what Plaintiff told him about the incident, including that he shoved Mr. Levar.  LF App., p. 20 - Esterly Dep. at 59:16-60:20; LF App., p. 39 hyperlink to Recording Snippet 3.

22.     Leprino Foods requested the reports from the Fort Morgan Police Department, which reflected Detective Vossberg's conversation with Plaintiff at the hospital.  Leprino received the Police Reports, including Report #2 (included in Intake Questionnaire, LF. App. pgs. 81-84) which confirmed Detective Vossberg's previous statement to Ms. Esterly – that Plaintiff had pushed Mr. Levar.  LF. App. pgs. 82-83 - police report #2; pgs. 22&23 - Esterly Dep. at 67:16-71:20.

23.     Based on several factors, including the Company's investigation, Plaintiff's and Mr. Levar's written statements, and the information received from the Fort Morgan Police Department, Leprino Foods determined that Plaintiff, who was acting as the Foreperson and Supervisor on the shift, had been an active participant in, and took actions which served to escalate, the altercation with Mr. Levar.  LF App., p. 2 - Schmidt Aff. at ¶ 12; LF App., p. 44 - Leprino Foods' Responses to Plaintiff's Initial Discovery Requests, Interrogatory No. 6.

24.     Consequently, both Plaintiff's and Mr. Levar's employment at Leprino Foods were terminated due to their respective violations of Leprino Foods' policy against violence in the workplace.  LF App., p 2 - Schmidt Aff. at ¶ 13; LF App., p. 59 - February 11, 2016 letter to Mr. Levar; LF App., p. 60 - February 29, 2016 letter to Plaintiff.

25.     When asked at his deposition why he didn't just leave the scene when Mr. Levar pushed him, Plaintiff responded "I don't know."  LF App., p. 30  - Donez Dep. at 94:6-95:21.

26.     Prior to their respective terminations, Plaintiff and Mr. Levar were similarly situated: a) they dealt with the same supervisor; b) they were subject to the same standards governing discipline, namely Leprino Foods' Workplace Violence Policy; and c) they engaged in

conduct of comparable seriousness by getting into a physical altercation at work.   LF App., p. 2 -
Schmidt Aff. at ¶ 14.

### D.     Plaintiff's Charge of Discrimination

27.     On December 15, 2016, Plaintiff submitted an Intake Questionnaire to the EEOC
and, on May 12, 2017, he filed a formal Charge of Discrimination ("Charge"). LF App. Plaintiff's
Intake Questionnaire, pgs. 62-118; EEOC Charge,  LF App., p. 61.

28.     In his submissions to the EEOC, made almost ten months after his termination,
Plaintiff claimed he was defending himself in connection with the February 9, 2016 altercation
with Mr. Levar, although he had not previously claimed to have been acting in self-defense during
his interview with Detective Vossberg or in his written statement provided to Leprino Foods. LF
App., p. 39  - audio recordings of interview; LF App., p. 39 hyperlinks to Recording Snippets 1
and 2; LF App., p. 33 - Plaintiff's written statement;  LF App. pgs. 66 - Intake Questionnaire; LF
App.,  pgs. 82-83, police report #2.

### D.     Plaintiff's Workers' Compensation Claim

29.     While Plaintiff was at the hospital, Risa Esterly brought him the paperwork
necessary to apply for workers' compensation.  Esterly Dep., LF App. at p. 16&17 - 44:19-45:12;
p. 18 - 49:24-50:12.

30.     Plaintiff filed his claim for workers' compensation prior to February 12, 2016.  LF
App., p. 125 - Defendant's Responses to Plaintiff's Second Set of Discovery Requests, Request
for Admission No. 9.

31.      Leprino Foods never contested Plaintiff's workers' compensation claim and
Plaintiff received his workers' compensation benefits from Leprino Foods, even after termination

of his employment.   LF App., p. 128 - Plaintiff's Responses to Defendant's Requests for Admission Nos. 1 and 2.

32.     Of the sixty-nine (69) Leprino Foods' employees who filed for workers' compensation from 2012 to 2017 only two (2) were terminated within four months of submitting such a claim – Plaintiff and Sharonfae Abernathy.   LF App., p. 3- Schmidt Aff. at ¶ 15. Ms. Abernathy's employment was terminated for failure to follow safety rules relating to lock out/tag out.  *Id.*

33.     Plaintiff further admitted at his deposition that, other than the fact that he was terminated, he has no other evidence to support his claim that he was fired because he filed a workers' compensation claim. LF App., p. 25  - Donez Dep. at 30:1-22.

## LEGAL STANDARD

The purpose of summary judgment is to determine whether a trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate under Fed.R.Civ.P. 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

To defeat a properly supported motion for summary judgment, "there must be evidence on which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied,* 516 U.S. 1160 (1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)).  In addition, "where the non-moving party will bear the burden of proof at trial on a dispositive issue that party must 'go beyond the pleadings' and

'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1128 (10th Cir. 1998) (citation omitted). When opposing a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

Summary judgment is not a "disfavored procedural shortcut." *Celotex Corp.,* 477 U.S. at 327. It is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Id.* The Court must grant summary judgment if the movant shows that the genuinely undisputed facts also legally entitle it to judgment. *Forbes v. Kinder Morgan, Inc.*, 172 F. Supp. 3d 1182, 1192 (D. Kan. 2016) (citing Fed. R. Civ. P. 56(a)).

## ARGUMENT

### I. There Is No Evidence to Support a Finding that Plaintiff Was Treated in a Manner Giving Rise to an Inference of Discrimination.

With regard to Plaintiff's claim for race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, pursuant to this Court's Civ. Practice Standard 7.1E, Leprino Foods states as follows:

(A)   Leprino Foods bears the initial burden of demonstrating "the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). Under Tenth Circuit precedent, Leprino Foods may make its prima facie demonstration by simply pointing out to the court a lack of evidence for Plaintiff on an essential element of his claim. *Id.* at 671;[2]

---

[2] After Leprino Foods meets its initial burden, the burden shifts to Plaintiff to put forth sufficient evidence for each essential element of the claim such that a reasonable jury could find in its favor. *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Plaintiff must go beyond the

(B)     To establish a claim of race discrimination in violation of Title VII, Plaintiff must prove: (1) membership in a protected class; (2) that he suffered an adverse employment action; and (3) that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination. *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007);

(C)     Leprino Foods does not dispute that (i) Plaintiff is in a protected class (Hispanic) or (ii) that Plaintiff suffered an adverse employment action. However, Leprino Foods contends there is no evidence to support Plaintiff's assertion that he was treated in a manner giving rise to an inference of discrimination.[3]

To establish an inference of racial discrimination, Plaintiff must demonstrate that he was "treated differently than other similarly situated employees who violated work rules of comparable seriousness." *See Aramburu,* 112 F.3d at 1404.[4]   The Tenth Circuit considers individuals to be similarly situated "when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.'" *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 801 (10th Cir. 2007); *see also Rivera*, 365 F.3d at 921 (citation omitted).

In this case, the undisputed evidence establishes Plaintiff and his co-worker Frank Levar

---

allegations and denials of his pleadings and provide admissible evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[3] As this Court is well aware, claims of race discrimination based on disparate treatment are evaluated using the three-step approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Plaintiff first must present a *prima facie* case of race discrimination based on disparate treatment. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir. 1997). If Plaintiff establishes a *prima facie* case, Leprino Foods may come forward with a legitimate nondiscriminatory reason for the action taken. *See id.* At that point, the burden shifts back to Plaintiff to demonstrate that Leprino Foods' articulated reason is a pretext for unlawful discrimination. *See id.*

[4] Comparable employees must be similarly situated in all relevant respects, but they need not be identically situated. *See id.* What is important is that the employees be comparable in those circumstances that are relevant to the employment decision. *See id.*

were: a) similarly situated in that they dealt with the same supervisor; b) subject to the same standards governing discipline --Leprino's Workplace Violence Policy; and c) engaged in conduct of comparable seriousness - getting into a physical altercation at work.  See LF App. pgs. 2-3 - Schmidt Aff. at ¶ 14.  If anything, Plaintiff, who was a Foreperson and was also acting as a Supervisor at the time of the incident, was arguably held to a higher standard.  Given that Mr. Levar, a Caucasian, received the exact same discipline as Plaintiff, there is no evidence to support Plaintiff's claim he was treated in a manner giving rise to an inference of discrimination. Accordingly, Plaintiff's race discrimination claim must be dismissed as a matter of law because he is unable to present evidence sufficient to establish a *prima facie* case of disparate treatment.

### B. Leprino Foods Had a Legitimate Nondiscriminatory Reason for Terminating Plaintiff's Employment.

Even assuming Plaintiff could meet his initial burden to present a *prima facie* case of race discrimination, Leprino Foods easily satisfies its burden under the second prong of the *McDonnell Douglas* framework.  Leprino Foods basic rules of conduct provide that workplace violence, including intimidation or fighting at the workplace, is not tolerated. LF App., pgs 4-11 - Workplace Security Policy.  In terminating Plaintiff's employment, Leprino Foods relied on several legitimate factors including this policy, the investigation conducted by Detective Vossberg, Plaintiff's and Mr. Levar's written statements, and its own internal investigation.  After this thorough and careful analysis of the findings, the Company determined that, rather than walk away, Plaintiff admittedly retaliated by pushing his co-worker.  LF App., p. 2 - Schmidt Aff. at ¶ 12; LF App., p. 39 hyperlinks to Recording Snippets 1 and 2; LF App.,  p. 44 - Leprino Foods' Responses to Plaintiff's Initial Discovery Requests, Interrogatory No. 6. In terminating Plaintiff's employment, Leprino Foods'

decisionmakers believed they were acting in good faith consistent with Leprino Foods' policy prohibiting fighting at the workplace.

By pointing to evidence that Plaintiff was terminated for being involved in a physical altercation with a co-worker while on the job in violation of Leprino Foods' workplace violence policy, Leprino Foods has articulated a nondiscriminatory reason for terminating his employment.

### C.      Plaintiff Cannot Establish Pretext.

Because Leprino Foods has articulated a nondiscriminatory reason for terminating Plaintiff's employment, Plaintiff faces the full burden of demonstrating by a preponderance of the evidence that Leprino Foods' proffered reason is pretextual. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993) (if the employer articulates a legitimate, non-discriminatory reason for the termination, the presumption of discrimination "simply drops out of the picture"); *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005).   In this regard, the relevant inquiry is not whether Leprino Foods' proffered reasons were wise,  fair or correct, but whether Leprino Foods honestly believed those reasons and acted in good faith upon those beliefs. *See Rivera,* 365 F.3d at 924-25; *Watts v. City of Norman*, 270 F.3d 1288, 1295 (10th Cir. 2001) (in determining whether the proffered reason for a decision was pretextual, courts examine the facts as they appear to the person making the decision). *McKnight*, 149 F.3d at 1129 ("An articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment.").

Plaintiff cannot establish pretext because there is no evidence that would create a genuine factual issue as to the reason for his discharge.  At best, Plaintiff's belated claim that he was acting in self-defense could allow a reasonable jury to find that Leprino Foods made a poor, perhaps even

unfair, decision to fire him for misconduct when he was allegedly not the aggressor in the altercation. But even with the benefit of hindsight, a reasonable jury could not question the "abundant and uncontroverted" evidence showing that Leprino Foods, relying on many sources of information, honestly believed that Plaintiff violated Leprino Foods' policy and that was the basis for its decision to terminate his employment. *Bittel v. Pfizer, Inc.,* 307 F. App'x 132, 140 (10th Cir. 2009) (declining to infer pretext from policy ambiguity because plaintiff's evidence failed to contradict evidence that plaintiff's employer "actually believe[d that plaintiff] had violated [the employer's] policies.").

Where, as here, decisionmakers rely, at least in part, on the investigative findings of others in making the termination decision, pretext is assessed not by determining the factual accuracy of such findings, but "by examining the facts as they appear to the person[s] making the decision to terminate" and whether the decisionmakers "reasonably 'perceived'" that the information they relied upon was accurate. *See Tesh v. U.S. Postal Serv*., 349 F.3d 1270, 1273 (10th Cir. 2003). Plaintiff cannot identify any evidence suggesting that Leprino Foods lacked an honest belief in the accuracy of the Fort Morgan Police Department report or that Leprino Foods failed to act in good faith when it reviewed and adopted these findings. Absent such evidence, there is no basis for second guessing Leprino Foods' exercise of its business judgment. *See Jones v. Barnhart*, 349 F.3d 1260, 1267 (10th Cir. 2003) (courts cannot "second guess[] employers' business judgments"). Accordingly, the Court must grant summary judgment to Leprino Foods on Plaintiff's race discrimination claim.

## II. Plaintiff Lacks Any Evidence to Support His Claim of Retaliation Relating to Workers' Compensation.

With regard to Plaintiff's claim for wrongful discharge in violation of public policy, to the

extent Plaintiff claims he was terminated for filing for workers' compensation, pursuant to this

Court's Civ. Practice Standard 7.1E, Leprino Foods states as follows:

(A)    Leprino Foods bears the initial burden of demonstrating a lack of evidence for Plaintiff on an essential element of his claim for wrongful discharge in violation of public policy;

(B)    To establish his claim that he was wrongfully discharged for exercising his right to apply for and receive workers' compensation benefits, Plaintiff must demonstrate that: 1) he was employed by Leprino Foods; 2) Leprino Foods discharged him; and 3) he was discharged for exercising his rights under the Workers Compensation Act to which he was entitled. CJI-Civ. 31:13 (2019); *Lathrop v. Entenmann's Inc.* 770 P.2d 1367, 1372-73 (Colo. App. 1989);

(C)    Leprino Foods contends Plaintiff cannot establish a *prima facie* case on this claim because there is no evidence of a causal connection between the protected activity and Plaintiff's termination.

Under Colorado law, either the employer or the employee may terminate at-will

employment at any time with or without cause, and such termination generally does not give rise

to a claim for relief. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987). The

at-will nature of the employment relationship reflects a matter of public policy. *Crawford*

*Rehabilitation Services v. Weissman*, 938 P.2d 540, 546 (Colo. 1997).  While Colorado law

recognizes an exception to the at-will employment doctrine for certain protected activity, in order

to establish a *prima facie* case of wrongful discharge claim in violation of public policy, a plaintiff

must demonstrate a causal connection between his alleged protected activity - *i.e.* exercising his

rights under the Workers' Compensation Act - and his termination.  *Lathrop,* 770 P.2d at 1367.

With regard to Plaintiff's contention that he was terminated by Leprino Foods in retaliation

for filing for workers' compensation, Plaintiff admitted that he has no facts to support the claim

other than the temporal relationship between the filing for workers' compensation and his

termination. LF App., p. 25 - Donez Dep. at 30:1-22.  The undisputed evidence establishes that, in fact, Leprino Foods encouraged Plaintiff to file a workers' compensation claim by bringing the necessary paperwork to him at the hospital and, at no time did Leprino Foods' challenge Plaintiff's workers' compensation claim. LF App., pgs. 16&17 - Esterly Dep. at 44:19-45:12; 49:24-50:12; LF App., p. 128 - Plaintiff's Responses to Defendant's Request for Admission Nos 1 and 2. Further, it is undisputed that Plaintiff did not engage in the public policy protected activity - filing for workers' compensation - until *after* he had engaged in the misconduct that resulted in his termination.

Moreover, Plaintiff cannot present any contradictory evidence from which a reasonable jury could conclude he was not terminated for being involved in a workplace altercation with his co-worker, but rather because he filed for workers' compensation.  In fact, of the over sixty-nine (69) workers' compensation claims filed by employees at the Fort Morgan plant between 2012 and 2017, only two (2) were terminated within four (4) months of the filing – Plaintiff and Sharon Fae Abernathy. LF App., p. 3 - Schmidt Aff. at ¶15.[5]   Like Plaintiff, Ms. Abernathy's employment was terminated due to violation of company policy (failure to follow safety rules relating to lock out/tag out) and her misconduct took place prior to her filing for workers' compensation. *Id.*

Policy considerations prohibiting retaliation for protected activities do not go so far as to allow an employee who is guilty of misconduct in violation of company policy, and thus on the

---

[5]See e.g. *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (four-month period between a plaintiff's participation in a protected activity and the alleged retaliatory action without more would be insufficient to support an  inference of causation).

verge of being terminated, to insulate himself from justified disciplinary action by subsequently engaging in protected activity. Here, Plaintiff's post-altercation filing for workers' compensation did not diminish or disturb the pre-existing basis the decision to terminate his employment.

### III. Colorado Law Does Not Recognize Self Defense as Protected Activity and at the Time Leprino Foods Made Its Decision to Terminate His Employment Plaintiff Had Not Asserted He Was Defending Himself in the Altercation.

With regard to Plaintiff's claim for wrongful discharge in violation of public policy, to the extent Plaintiff claims he was terminated despite acting in self-defense, pursuant to this Court's Civ. Practice Standard 7.1E, Leprino Foods states as follows:

(A)     Leprino Foods bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law by pointing out a lack of evidence for Plaintiff on an essential element of his claim;

(B)     To establish he was wrongfully discharged for exercising his right to defend himself, Plaintiff must establish that 1) Colorado law recognizes self-defense as a protected activity; and 2) Leprino Foods terminated him despite knowing Plaintiff was defending himself at the time of his altercation with his co-worker;

(C)     Leprino Foods contends Plaintiff cannot establish a *prima facie* case on this claim because 1) Colorado law does not recognize self-defense as a protected activity; and 2) even if it did, at the time Leprino Foods made its decision to terminate Plaintiff's employment, Plaintiff had not claimed he had acted in self-defense.

#### A.     Colorado Law Does not Recognize Self Defense as a Protected Activity.

Defendant has found no legal authority in Colorado which would support Plaintiff's contention that acting in self-defense is a protected activity that would support a claim for wrongful discharge in violation of public policy. Tellingly, the only authority cited by Plaintiff to support this proposition is from other jurisdictions and, even then, the cases cited by Plaintiff in his Complaint, *Ray v. Wal-Mart Stores, Inc.,* 359 P.3d 614, 629-631 (Utah 2015) and *Feliciano v. 7-Eleven, Inc.*, 559 S.E.2d 713 (2001), are readily distinguishable. Doc. 7, p. 4 ¶ 18.

Both *Ray v. Wal-Mart Stores, Inc.* and *Feliciano v. 7-Eleven, Inc.* involved company policies which prohibited employees from taking violent action against intruders who intend to steal the employer's merchandise. *Ray.,* 359 P.3d at 618 and *Feliciano*, 559 S.E.2d at 716. The policies were premised on the employers' concern that their employees' actions might escalate an already dangerous situation. *Id.* The employers sought to protect employees and customers from true imminent harm.

Moreover, the *Ray* Court actually held that public policy supporting the right to self-defense "does not preclude an employer from maintaining non-confrontation and de-escalation policies in situations where an employee has an opportunity to safely withdraw or does not face imminent danger." *Ray.,* 359 P.3d at 621. The Court recognized that the right to self-defense *"*does not set forth an absolute right to meet force with force . . ." and found that "to the extent the [e]mployees suggest that Utah public policy does not contemplate a duty to retreat in the workplace under any circumstances, they are mistaken". *Id.,* at 621, 625. The *Ray* Court reasoned that "when there is no imminent threat of serious bodily injury or a reasonable opportunity to withdraw … an employer's interest in regulating its workforce and property outweighs employees' interest in defending themselves without fear of being terminated." *Id.* at 630.

To the extent that the Supreme Court of West Virginia held in *Feliciano* that an at-will employee stated a cause of action for wrongful discharge in violation of public policy when his employer terminated him for disarming an armed assailant during an in-store robbery, the Court was relying on West Virginia case law establishing that "a defendant who is not the aggressor and has reasonable grounds to believe, and actually does believe, that he is in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force against his

assailant has the right to employ deadly force in order to defend himself." *Feliciano*, 559 S.E.2d at 719. The public policy exception in *Feliciano* based on "self-defense in response to lethal imminent danger" is simply inapplicable to the facts of this case. *Id.* at 722-24.

Leprino Foods' Workplace Violence Policy is based on entirely different considerations than the polices at issue in *Ray* and *Feliciano*.  Leprino Foods policy is aimed at preventing physical conflict between co-workers.  Plaintiff was terminated because he was involved in a physical altercation with his co-worker. When Plaintiff was first pushed by Mr. Levar he was not in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force as in the *Ray* and *Feliciano* cases. Rather, even if he was not the aggressor, Plaintiff, who was acting as Supervisor and Foreperson, could, and should, have simply walked away rather than escalating the situation by admittedly retaliating.

### B.   Plaintiff Did Not Claim He Was Defending Himself in the Altercation Until After He Was Notified that His Employment Was Being Terminated.

Even if Colorado law recognized self-defense as a protected activity, in order to defeat summary judgment, Plaintiff would have to prove that Leprino Foods was aware of Plaintiff's assertion he was solely defending himself at the time of the altercation with his co-worker prior to its decision to terminate his employment. *Ferris v. Bakery, Confectionery & Tobacco Union, Local 26*, 867 P.2d 38, 44 (Colo. App. 1993) (plaintiff must identify material, admissible, evidence that supports the conclusion that his employer was aware of the employee's protected activity before the decision to terminate his employment was made). As noted by the Tenth Circuit in *Petersen v. Utah Dep't of Corr.,* 301 F.3d 1182, 1188-89 (10th Cir. 2002), addressing a retaliation claim under Title VII, an employer's action against an employee cannot be *because* of that employee's

protected activity unless the employer knows the employee has engaged in protected activity.  *See Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) ("plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity").

Plaintiff is unable to prove that Leprino Foods was aware of his claim that he was defending himself during the altercation with Mr. Levar because the undisputed facts establish the contrary. At the time Leprino Foods made its decision to terminate his employment, Plaintiff had not claimed he had acted in self-defense.  Rather, during his interview with Detective Vossberg, Plaintiff twice admitted that when Mr. Levar moved him back, he retaliated by pushing him, but he did not claim he was acting in self-defense.  LP App., pgs. 82-83 - police report #2; LF App., p. 39 hyperlinks to Recording Snippets 1 and 2.  Similarly, in the written statement he provided to Leprino Foods Fort Morgan plant's Human Resources Department, Plaintiff made no mention of having acted in self-defense.  LP App., p. 33 - Plaintiff's written statement.  Further, when asked at his deposition why he did not just walk away after Mr. Levar pushed him, Plaintiff responded, "I don't know." LF App., p. 30  - Donez Dep. at 94:6-95:21.

Thus, even if Plaintiff engaged in protected activity during his altercation with his co-worker, there is no evidence to support a finding that Leprino Foods was aware of this protected activity before it decided to terminate his employment. *Ferris*, 867 P.2d at 44.

## CONCLUSION

WHEREFORE, Defendant Leprino Foods Company requests that this Court grant summary judgment in its favor on Plaintiff's claims for race discrimination and wrongful termination in violation of public policy.

DATED this 10th day of December, 2019.

CAMPBELL KILLIN BRITTAN & RAY, LLC

By: *s/ William C. Brittan*
William C. Brittan, #17643
Margaret R. Pflueger, #39780
270 St. Paul Street, Suite 300
Denver, CO 80206
Phone: (303) 322-3400
Fax: (303) 322-5800
Email: bbrittan@ckbrlaw.com
mpflueger@ckbrlaw.com

*Counsel for Defendant Leprino Foods Company*

## CERTIFICATE OF SERVICE

I, the undersigned, certify that on this 10th day of December, 2019, a true and correct copy of the foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56** was filed and served through the CM/ECF system on the following:

Amy Burma
Burma Law Offices, LLC
1035 Pearl Street, Suite 325
Boulder, CO 80302
amy@Burmalawoffices.com

*Attorneys for Plaintiff*

*s/Andrea Davis*
*Andrea Davis*