**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-CV00285-CMA-NRN

NICOLAS DONEZ,

        Plaintiff,

v.

LEPRINO FOODS COMPANY, a Colorado corporation,

        Defendant.

---

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

---

Defendant Leprino Foods Company ("Leprino Foods"), through its undersigned counsel, William C. Brittan and Margaret R. Pflueger, of the law firm of Campbell Killin Brittan & Ray, LLC, herein submits its Reply to Plaintiff's Response in Opposition to Leprino Foods Company's Motion for Summary Judgment ("Response") [Doc # 46] and in support thereof states as follows:

### I.  SUMMARY OF REPLY

Plaintiff's sole federal claim for race discrimination boils down to an assertion that Leprino Foods terminated Plaintiff's employment for violating the company's Workplace Security Policy ("WSP") when other Caucasian employees who engaged in allegedly similar conduct were not terminated. Leprino Foods is entitled to summary judgment on this claim because a) Plaintiff cannot establish a prima facie case of race discrimination, especially when his Caucasian co-worker, Frank Levar, was also terminated for being involved in the workplace fight; b) violation

of a company policy is a legitimate, nondiscriminatory reason for terminating an employee; and c) Leprino Foods' genuine belief, which Plaintiff cannot dispute, that Plaintiff had violated its WSP precludes a finding of pretext.

Plaintiff's single state law claim for wrongful discharge in violation of public policy must also be dismissed because any inference that might be drawn from the temporal proximity of Plaintiff's filing for workers compensation and his termination does not surmount the undisputed evidence establishing that 97% of Leprino Foods' employees who filed workers compensation claims between 2012 to 2017 were not terminated within four (4) months of filing. Further, Plaintiff fails to cite to any Colorado law which prohibits an employer from terminating an at-will employee where the employee later claims he was defending himself in a fight with a co-worker. Moreover, although Leprino Foods disputes Plaintiff ever told Leprino Foods he was acting in self-defense during the fight, even viewing the facts in a light most favorable to Plaintiff for purposes of the Motion, Plaintiff does not dispute that February 29, 2016 was the earliest he made Leprino Foods aware of this theory of self-defense, which was *after* Leprino Foods made the decision to terminate his employment. Thus, Leprino Foods was unaware of Plaintiff's alleged protected activity when it made the decision to terminate his employment.

## II.    COMMENTS RE PLAINTIFF'S RESPONSES TO LEPRINO FOODS' UNDISPUTED FACTS

7.    Citation misstates Julia Lambert's testimony which concerned only training she had for purposes of enforcing the WSP. Doc 46-1 – Lambert Dep. at 27:24-28:13.

9/25/33. In violation of Fed.R.Civ.P.56(c)(1), Plaintiff's Response fails to admit his own deposition testimony that a) he was aware that Leprino had a policy which did not tolerate

intimidation, harassment or fighting at the workplace [Doc 41-1, p. 31 - Donez Dep. at 99:3-100:9][1]; b) he didn't know why he didn't just leave the scene when Mr. Levar pushed him [LF App., p. 30 - Donez Dep. at 94:6-95:21] and c) other than the fact that he was terminated, he has no other evidence to support his claim that he was fired because he filed a workers' compensation claim [LF App., p. 25 - Donez Dep. at 30:1-22].

14. Plaintiff's citation does not demonstrate Mr. Levar had a mallet or hammer at the time of his altercation with Plaintiff, and, in fact, it was Plaintiff that had the mallet at that time. Doc 41-1, p. 83 - Police Report; Doc 41-1, p. 33 - Plaintiff's February 10, 2016 Statement ("Stm.").

15/20/21. Incredibly, in violation of Fed.R.Civ.P.56(c)(1), Plaintiff denies recorded statements made to the Fort Morgan Police Department ("FMPD"), claiming the audio recordings are "incomplete and inaccurate" and/or edited in a misleading manner. However, Plaintiff does not provide any additional recordings or other evidence to refute these statements.

16/23. While Plaintiff now claims he pushed Mr. Levar in self-defense, he did not tell that to the FMPD or include that in his statement to Leprino Foods. The claim of self-defense is only mentioned by Plaintiff post-termination. Plaintiff's citation to Ms. Esterly's deposition testimony confirms he never mentioned it to her prior to the termination decision. Doc 46-1, p. 40– Esterly Dep. at 72:4-10; Doc 41-1, p. 33-Plaintiff's Stm. and p. 39 –Recording ("Recordings") 1 and 2.

18. Plaintiff's statement that he was never interviewed by Leprino Foods after the incident is clearly inaccurate as Ms. Esterly interviewed him on the day of the incident at the hospital and spoke with Plaintiff after receiving the police report that indicated Plaintiff admitted

---

[1] Page citations to Doc 41-1 and 46-1 refer to the parties' original pagination in their respective appendices.

{00395603.DOCX / 1}                                3

pushing Mr. Levar. Doc 41-1, pp. 17& 23 - Esterly Dep. at 45:13-46:20; 69:21-71:20; Doc 46-1, pp. 349-350.

### III.    PLAINTIFF'S ADDITIONAL UNDISPUTED FACTS

34/35.  Admit.

36.  Admit Plaintiff was nominated for the award but deny remainder as unsupported by the evidence cited. Doc 46-1, p. 389.

37.  Admit that Ryan Henry, a Caucasian and former Whey Department Foreperson, who had been assigned to a special project, returned to the Whey Department in his previous role. Deny the remainder as unsupported by the evidence cited. Doc 46-1, p. 343.

38.  Admit.

39.  Admit the WSP provided that if there was an incident that might involve workplace violence, Leprino Foods would investigate it and take appropriate action, up to and including termination, based on the severity of the employee's conduct and what was determined during the investigation. Deny the term "zero tolerance" as vague and undefined. LF Supp. App. pp. 2 and 3 - Schmidt Dep. at 39:16-41:22.

40.  Deny that the WSP does not define what conduct violated the policy and criteria used to find a violation, as examples are included in the policy. Admit that a determination of whether conduct was a violation of this policy was left to the discretion of the persons investigating the incident. Doc 41-1, pp. 5-11 – WSP.

41.  Deny. LF Supp. App., pp. 10 and 11 - Lambert Dep. at 120:14-121:24.

42.  Deny. Doc 41-1, p. 13 - Esterly Dep. at. 26:16-27:23; LF Supp. App., p. 4 - Schmidt Dep. at 59:20-60:20.

43. Admit that the WSP has guidelines for investigating an incident under the policy, which includes interviewing the witnesses or individuals affected. Admit that the policy provides that in the event of violence, contacting law enforcement may be appropriate. Deny that the policy specifically provides for conducting additional interviews if necessary, blocking off areas and taking photographs, but admit that those actions may be necessary during an investigation of purported workplace violence. Deny that this is the only case where Leprino Foods included police reports as part of its investigation file, as Ms. Esterly's testimony was solely related to her experience. Doc 41-1, pp. 8-10 - WSP; LF Supp. App., p. 14 - Esterly Dep. at 90:9-13.

44. Denied regarding that Mr. Levar being visibly angry and yelling at Plaintiff that "next time I tell you I need help, you need to send me help", and deny that this is a full and accurate representation of the events at issue. Otherwise admitted. Doc 46-1, p. 380; LF Supp. App. p. 17 - Recording 4; Doc 41-1, p. 34 - Levar Stm.

45. Deny. Doc 41-1, pp. 33 and 34 - Plaintiff's Stm. and Levar Stm.; LF Supp. App. p. 17 - Recording 4; Doc 41-1, p. 39 –Recordings 1 and 2.

46. Admit.

47. Admit that Mr. Davidson initially went to the refiner room and found Plaintiff on the floor. Deny the remainder as unsupported by the evidence cited.

48. Deny. The cited assertion is hearsay and not supported by proper medical testimony or other admissible evidence.

49. Deny, specifically that there was an "assault". Doc 41-1, p. 34 - Levar Stm.; Doc 41-1, p. 39 – Recordings 1 and 2; LF Supp. App. p. 17 - Recording 4.

50. Deny. The cited testimony and evidence do not support Plaintiff's assertion. Doc 41-1, p. 83 - Police Report; Doc 41-1, p. 33 - Plaintiff's Stm.

51. Admit that after the altercation between Mr. Levar and Plaintiff, Mr. Levar told Ms. Esterly that he had knocked Plaintiff out and it was his exit interview. Deny the remainder as unsupported by the evidence cited, including that Mr. Levar admitted "assaulting" Plaintiff.

52. Admit, except for the fact that Ms. Esterly escorted Mr. Levar out of the building, which is denied as unsupported by the deposition testimony cited.

53. Deny as unsupported by the evidence cited.

54. Admit that Ms. Esterly asked Plaintiff's wife Heather to get a written statement from him. Otherwise deny. Doc 41-1, p.17 - Esterly Dep. at 45:13-46:20; Doc 41-1, p.33 – Plaintiff's Stm.; Doc 46-1, p. 349-350.

55. Deny. LF Supp. App., p. 5 - Schmidt Dep. at 80:10-23.

56. Admit.

57. Admit that Leprino Foods requested the FMPD reports in order to verify Plaintiff's statements to the police that he had pushed Mr. Levar. Deny the remainder as unsupported by the evidence cited.

58. Deny as unsupported by the evidence cited.

59. Admit that additional reports were submitted by the police following February 22, 2016, but deny any additional reports are relevant to the issue of Plaintiff's termination.

60. Admit.

61. Deny. Doc 41-1, p. 23 - Esterly Dep. at 71:1-72:10; LF Supp. App. p.13 - Esterly Dep. at 74:10-75:5; LF Supp. App. p. 19 - Plaintiff's Dep. at 118:11-120:21.

62. Deny as unsupported by the evidence cited.

63. Deny that Mr. Levar was convicted of second-degree assault. Admit that Mr. Levar was convicted of assault in the third degree. Admit that Mr. Donez was never charged by the Fort Morgan Police Department. Doc 46-1, p. 429.

64. Leprino objects to these factual allegations as irrelevant and too remote. Without waiving these objections, admitted in or around 2010 or 2011, Mr. Levar and Mr. Tucker, a Caucasian, got into an argument at the plant, and Mr. Tucker, who was angry at the time, got up out of his chair and stepped to within a foot of Mr. Levar just before Mr. Levar pushed him back. Further admit Mr. Tucker and Mr. Levar each went to HR and neither were disciplined for the incident. Further admit Mr. Tucker felt that prior to being pushed, he got too close to Mr. Levar and persons in HR, including Shane Cole and Don Northrup, told Mr. Tucker he may have been partially to blame for being the instigator in the incident. Denied Shane Cole was employed by Leprino Foods at the time of Plaintiff's incident in February, 2016. Doc 46-1 pp. 313-316 - Crim. Trans. II at 47:19-50:8; LF Supp. App. pp. 20-27 - FTR Trans. at 15:4-21:20; LF Supp. App. pp. 8 and 9 - Lambert Dep. at 15:16-16:3; 54:4-19.

65. Admit on July 15, 2015, Kyle Lara, Hispanic, struck Mr. Nicaise twice in the head, that Mr. Lara was terminated for this conduct and that Mr. Nicaise did not strike Mr. Lara or retaliate and was not terminated. Deny the incident was an "altercation" as Mr. Nicaise did not engage in violent behavior. Deny Mr. Nicaise was Caucasian as unsupported by the evidence. LF Supp. App. pp. 28-31 – Lara Investigation Notes ("Notes").

66. Admit that in March 2016 Jay Marshall alleged that Shawn Morrison, a Caucasian employee, engaged in behavior such as roughhousing, grabbing shoulders, pretending to

{00395603.DOCX / 1}                                     7

chokehold and playing around. Further admit that Mr. Morrison met with management concerning these allegations and Mr. Morrison received a warning to stop the behavior. Further admit that Heather Donez alleged that Mr. Morrison had lifted up a female coworker but denies that the female coworker complained. Admit Mr. Morrison was given a "Last and Final Warning" on April 18, 2016 for his unprofessional behavior.[2] Admit Crystal Campos, a Hispanic employee was terminated for kicking a co-worker in the groin area. Deny the remainder as unsupported by the evidence cited. LF Supp. App. pp. 32-35- Morrison Notes and p. 45 – Campos Notes.

67. Admit that Jedidiah Camacho, a Hispanic, was terminated in September, 2012 for making violent statements, including that he had a "death list" and threatening to bring "a machine gun in and killing everyone". Leprino objects to the allegations relating to Chris Dreher as irrelevant, immaterial and remote. Without waiving these objections, admitted Mr. Dreher received the written warning attached to Plaintiff's Response. LF Supp. App. pp. 46-49 – Camacho Notes.

68. Admit that all employees listed worked at Leprino's Fort Morgan plant but deny the remainder, since no supportive evidence is provided.

69. Objection to this statement as containing hearsay and irrelevant and unduly prejudicial. Without waiving these objections, denied as evidence does not support alleged fact.

### III.   ARGUMENT

#### A.   The Evidence Precludes a Finding of a Prima Facie Case of Discrimination.

---

[2] In the Response at footnote 3, Plaintiff includes additional facts concerning Mr. Morrison's ultimate termination for threatening violence against individuals at the Leprino Fort Morgan Plant. Leprino admits Mr. Morrison was fired in December 2017 for threats made against employees of Leprino Foods of Leprino Foods. In 2018, Leprino Foods went to Court and obtained a Civil Protection Order against Mr. Morrison. LF Supp. App. pp. 36-44 – Morrison Notes and Request for Retraining Order.

{00395603.DOCX / 1}                                                     8

As argued in the Motion, Plaintiff cannot establish a prima facie case of discrimination because he is unable to show *similarly situated non-minority employees were treated differently.* The undisputed fact is Plaintiff's "similarly situated" Caucasian co-worker Mr. Levar was terminated for being involved in the exact same fight. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir. 1997), citing *EEOC v. Flasher Co., Inc*., 986 F.2d 1312, 1316 (10th Cir. 1992).

Plaintiff cannot argue that he and Mr. Levar were not similarly situated. [Doc 46, p. 14] The undisputable evidence confirms that Plaintiff and Mr. Levar: a) dealt with the same supervisor; b) were subject to the same standards governing discipline, namely the WSP; and c) engaged in conduct of comparable seriousness by getting into a physical altercation at work. Doc 41-1, p. 2 - Schmidt Aff. at ¶ 14.  Plaintiff's contention that he did not engage in conduct of comparable seriousness because he suffered greater injuries than Mr. Levar in the fight [Doc 46, p. 14] in untenable as it would require an employer to find that the loser of the fight did not engage in the "same conduct" as the winner.  The relevant question is not who won the fight, but whether both employees engaged in the fight.  Plaintiff's own statements establish he was an active participant in the fight.  Doc 41-1, pp. 82-83 - police report #2 and pp. 22&23 - Esterly Dep. at 67:16-71:20; p. 39 – Recordings 1 and 2.[3]

As a matter of law, a jury cannot find that Plaintiff has established a *prima facie* case of discrimination given that Mr. Levar, a similarly situated Caucasian co-worker, received the same discipline as Plaintiff for engaging in workplace violence.  Because Plaintiff asserts no other facts

---

[3] The focus is on the information provided to Leprino Foods as the decision maker and whether Leprino Foods *believed* it to be true, not Plaintiff's subjective description of the incident. *Id,* citing *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1307 (10th Cir. 2005) (court does not depend "plaintiff's subjective evaluation of the situation.")

suggesting discriminatory animus on the part of Leprino Foods, the jury is left with no basis for inferring that Leprino Foods discriminated against Plaintiff because he is Hispanic.

### B. Leprino Foods Had a Legitimate, Nondiscriminatory Reason for the Termination.

As set forth in detail in the Motion, the undisputed evidence establishes that Leprino Foods terminated Plaintiff for violating company policy. Doc 41-1, p. 2 - Schmidt Aff. at ¶ 12; Doc 41-1, p. 39 - Recording Snippets 1 and 2; Doc 41-1, p. 44 - Leprino Foods' Responses to Plaintiff's Initial Discovery Requests, Interrogatory No. 6. Leprino Foods' justification for Plaintiff's termination is legitimate and nondiscriminatory. *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1997 WL 118531, *4 (10th Cir. 1997). Because Leprino Foods met its burden to produce evidence establishing that Plaintiff was discharged for a facially legitimate and nondiscriminatory reason, "the presumption of discrimination established by the prima facie showing simply drops out of the picture." *Flasher Co., Inc.*, 986 F.2d 1312, 1317-18 (10th Cir. 1992) (emphasis in original) ("It is only *unexplained discipline*, not *unexplained disparities*, that will justify judgment in favor of the plaintiff under the second prong of *McDonnell Douglas*.") Again, Plaintiff cannot submit any evidence that would allow a jury to find Leprino Foods did not have a legitimate, non-discriminatory basis for his termination.

### C. Plaintiff's Evidence Does Not Support a Finding of Pretext.

To survive summary judgment, Plaintiff was required to present evidence raising a genuine issue that his termination was the result of his race or that the reason offered by Leprino Foods was a mere pretext. *See Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995). In this regard, not having any direct evidence that he was terminated as a result of his race, Plaintiff is left to rely on circumstantial evidence purportedly showing that similarly situated non-minority employees

{00395603.DOCX / 1}                                                  10

were not discharged for the same or similar conduct. However, a review of the incidents cited in Plaintiff's Response concerning other non-minority employees dispels Plaintiff's contention that these incidents involved similarly situated employees and/or conduct of comparable seriousness.

      a.      <u>Shane Tucker/Frank Levar</u> [Doc # 46, p. 11 at ¶ 64]. As explained in Section III, ¶ 64 above, in 2010 or 2011, Shane Tucker and Mr. Levar got into an argument at the plant. This remote incident did not involve a fight or violence and the seriousness of the conduct was evaluated by a different supervisor than the one investigating the fight between Plaintiff and Mr. Levar.[4]

      b.      <u>Kyle Lara/Chase Nicaise.</u> [Doc # 46, p. 11 at ¶ 65]. As explained in Section III, ¶65 above, Kyle Lara violently struck Mr. Nicaise twice in the head and was justifiably fired. Unlike Plaintiff, Mr. Nicaise did not engage in violent conduct and a fight did not ensue.

      c.      <u>Shawn Morrison/ Crystal Campos</u> [Doc # 46, p. 11 at ¶ 66]. As explained in Section III, ¶66, Shawn Morrison allegedly roughhoused with co-workers. This conduct, reported to Leprino Foods as inappropriate horseplay and not workplace violence, does not equate to the level of violence involved in the fight between Plaintiff and Mr. Levar. Further, Mr. Morrison was, in fact, disciplined for this less severe conduct. Moreover, as Plaintiff acknowledges in his Response, Mr. Morrison, who is Caucasian, was later terminated when he threatened violence. Doc 46-1, fn.

---

[4] See *Aramburu,* 112 F.3d at 1404 (to be similarly situated, employees must deal with the same supervisor); see also *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1122 (10th Cir. 2007), *citing Flasher*, 986 F.2d at 1317-18 ("[s]ometimes apparently irrational differences in treatment between different employees that cannot be explained on the basis of clearly articulated company policies may be explained by the fact that the discipline was administered by different supervisors, or that the events occurred at different times when the company's attitudes toward certain infractions were different, or that the individualized circumstances surrounding the infractions offered some mitigation for the infractions less severely punished, or even that the less severely sanctioned employee may be more valuable to the company for nondiscriminatory reasons than is the other employee" "[o]ther times, no rational explanation for the differential treatment between the plaintiff and the comparison employees may be offered", and even that explanation does not compel the conclusion "the defendant was acting with a secret, illegal discriminatory motive.")

3; LF Supp. App. pp. 36-44 – Morrison Notes. Similarly, as explained in Section III, paragraph 66, Ms. Campos was fired for committing a violent act when she kicked Carlos Sibriana, a Hispanic, in his "man parts", a clear violation of Leprino Foods' Policy.

   d. <u>Chris Dreher/ Jedidiah Camacho.</u> [Doc # 46, p. 11 at ¶ 67]. As explained in Section III, ¶ 67, above, Mr. Dreher was disciplined for his non-violent inappropriate touching. Mr. Dreher was not accused of threatening or committing acts of physical violence. Whereas, as is also explained in Section III, paragraph 67, Jedidiah Camacho was terminated for threatening in September, 2012 for violent statements, including the existence of a death list and threatening to bring "a machine gun in and killing everyone". LF Supp. App., pp. 46-49 – Camacho Notes.[5]

  Given these obvious distinctions, a reasonable jury cannot find that Leprino Foods treated non-minority employees differently. Instead, the undisputed evidence shows that it treated employees based on the facts involved in each incident. The evidence confirms that it is the seriousness of the incident, not the race of the employee, which dictates Leprino Foods' decision to discipline or terminate the employee. *Forbes v. Kinder Morgan, Inc.*, 172 F. Supp. 3d 1182 at \*22 (D. Kan. 2017), citing *Timmerman*, 483 F.3d at 1115, 1117-18 ("The law will not regard circumstantial evidence of bias as probative of pretext unless 'some logical nexus' connects that evidence to the employer's decision to terminate.")

  Further, it is Leprino Foods' genuine belief that Plaintiff was engaged in workplace

---

[5] As with the Tucker/Levar incident, the Dreher/Camacho incident took place years before Plaintiff's fight and these remote in time incidents are insufficient to prove pretext. *Watts v. City of Norman*, 270 F.3d 1288, 1297 (10th Cir. 2001) (evidence concerning specific incidents that were remote in time, dating from many years before the decision at issue in this case falls short of proving pretext); *Heno v. Sprint/United Management Co.*, 208 F.3d 847, 856 (10th Cir. 2000) (court admitting anecdotal evidence of discrimination should "scrutinize the time frame" and look for nexus to adverse employment action); *Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse*, 165 F.3d 1321, 1330-31 (10th Cir. 1999) (incident not similar for pretext purposes because of three years' time lapse).

{00395603.DOCX / 1}      12

violence, not whether Plaintiff was or was not the aggressor, that matters. Under Tenth Circuit law, the "pertinent question in determining pretext is not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine . . . " *Rivera v. City and County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004); *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000). Likewise, the issue is not whether the decision to terminate was wise, fair or correct, but whether the employer reasonably believed at the time of the termination that the employee had violated company policy, and acted in good faith upon that belief. *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006); *Flasher Co.*, 986 F.2d 1312, 1321 (10th Cir. 1992).

Plaintiff's contention that Leprino Foods did not follow its policy with respect to conducting workplace violence investigations because it "did not interview or obtain a statement from Plaintiff after the incident" [Doc 46, p. 9, ¶ 54] is patently false as the uncontroverted evidence confirms Leprino Foods did, in fact, interview Plaintiff in the hospital and obtained a written statement from him. Doc 41-1, p. 17 - Esterly Dep. at 45:13-46:20; p.33 – Plaintiff's Stm.; Doc 46-1, p. 349-350. Similarly, Plaintiff cannot show evidence of discrimination by taking issue with the fact that Leprino Foods coordinated with police when investigating and making its decision to terminate Plaintiff's employment. He simply cannot offer any evidence that would undermine the reasonableness of Leprino Foods relying on the FMPD report or show that the Company failed to act in good faith when it reviewed and adopted these findings.

Further, even if there were a legitimate basis to fault Leprino Foods' investigation, federal law finds that evidence that the defendant failed to conduct a complete investigation cannot demonstrate pretext. *See, e.g. Rizzo v. PPL Serv. Corp.*, 2005 WL 913091 at *11 (E.D. Pa. April

19, 2005); *Taylor v. Proctor & Gamble Dover Wipes*, 184 F. Supp. 2d 402, 415-16 (D. Del. 2002) (defendant's failure to interview plaintiff and another witness did not demonstrate pretext).[6]

Even viewing the facts in the light most favorable to Plaintiff, there is not enough actual evidence for a reasonable jury to conclude that any discrimination occurred. Therefore, summary judgment is appropriate for this claim.

### D. Leprino Foods Does Not Retaliate for Filing for Workers' Compensation.

Plaintiff concedes only 2 employees out of 69 who filed for workers' compensation between 2012 and 2017 were terminated within four (4) months of the filing, and both were terminated for violating company policies. Doc 46, p. 6, ¶ 32; Doc 41-1, p. 3 - Schmidt Aff. at ¶15. Considering 97% of the employees who filed for workers' compensation over this five-year time period were not terminated within four months of the filing, no reasonable jury could find that Leprino Foods terminated Plaintiff in retaliation for his filing a claim for workers' compensation.

### E. Plaintiff Fails to Support His Claim for Self-Defense.

Plaintiff's relies on the Colorado Constitution's recognition of an individual's right "of seeking and obtaining their safety" and their right to "bear arms in protection of their home, person and property" as support for a public policy favoring a right to self-defense in the workplace. Doc 46, pp. 18-19. However, in making this exaggerated leap, Plaintiff exposes that there is no Colorado case law to support his position that an employer may be found liable for wrongful

---

[6] Likewise, "the mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual." *Sanders v. Sw. Bell Tel., L.P.,* 544 F.3d 1101, 1106 (10th Cir. 2008) (irregularities only become "disturbing" and thus evidence of pretext when they are "idiosyncratic or questionable").

discharge in violation of public policy if an at-will employee claims to have acted in self-defense during a workplace fight with a co-worker. As set forth in the Motion, the cases from other jurisdictions relied on by Plaintiff for this proposition are distinguishable. Doc 41, pp. 17-19.

### F.     Leprino Foods Was Unaware Plaintiff Was Claiming He Acted in Self Defense.

Even if Colorado law supports an employee's right to defend himself during a workplace altercation as a matter of public policy, and assuming the truth of Plaintiff's assertion that he was justified in pushing Mr. Levar because he was "fearful of a lethal and imminent assault" [Doc 46, p. 19], Leprino Foods, as a matter of law, cannot be found liable for wrongful discharge in violation of public policy because the evidence establishes it was not aware that Plaintiff was claiming to have been acting in self-defense in his fight with Mr. Levar until *after* it made the decision to terminate his employment.  Doc 46, p. 11 at ¶ 61; Doc 41-1, p. 24 - Esterly Dep. at 70:18-72:6; Doc 41-1, p. 7 at ¶¶ 23 and 24; LF Supp. App., p. 13 - Esterly Dep. at 74:18-75:5; p. 6 - Schmidt Dep. at 91:13-92:1. *Ferris v. Bakery, Confectionery & Tobacco Union, Local 26*, 867 P.2d 38, 44 (Colo. App. 1993) (plaintiff must identify evidence supporting conclusion employer was aware of employee's protected activity before the decision to terminate was made); *Petersen v. Utah Dep't of Corr.,* 301 F.3d 1182, 1188-89 (10th Cir. 2002)(an employer's action against an employee cannot be *because* of that employee's protected activity unless the employer knows the employee has engaged in protected activity); *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993).

### CONCLUSION

WHEREFORE, Defendant Leprino Foods Company requests that this Court grant summary judgment in its favor on Plaintiff's claims for race discrimination and wrongful termination in violation of public policy.

DATED this 21st day of January, 2020.

**CAMPBELL KILLIN BRITTAN & RAY, LLC**

By: *s/ William C. Brittan*
William C. Brittan, #17643
Margaret R. Pflueger, #39780
270 St. Paul Street, Suite 300
Denver, CO 80206
Phone: (303) 322-3400
Fax: (303) 322-5800
Email: bbrittan@ckbrlaw.com
mpflueger@ckbrlaw.com

*Counsel for Defendant Leprino Foods Company*

**CERTIFICATE OF SERVICE**

      I, the undersigned, certify that on this 21st day of January, 2020, a true and correct copy of the foregoing **DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** was filed and served through the CM/ECF system on the following:

Amy Burma
Burma Law Offices, LLC
1035 Pearl Street, Suite 325
Boulder, CO 80302
amy@Burmalawoffices.com

*Attorneys for Plaintiff*

                                        *s/Andrea Davis*
                                        Andrea Davis