IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-00285-CMA-NRN

NICOLAS DONEZ,

    Plaintiff,

v.

LEPRINO FOODS, INC.,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Defendant Leprino Foods, Inc.'s ("Leprino Foods" or "Defendant") Motion for Summary Judgment. (Doc. # 41.) The Court denies Defendant's Motion as to Plaintiff's Title VII claim for discrimination because genuine issues of material fact govern the dispute. The Court grants Defendant's Motion as to Plaintiff's wrongful discharge in violation of public policy claim for the reasons described herein.

## I.    BACKGROUND

Leprino Foods is a privately held corporation headquartered in Colorado that

manufactures cheese and dairy-related products. (Doc. # 41-1 at 1.)[1] Leprino Foods has nine manufacturing facilities across the United States, including the Fort Morgan facility where Plaintiff worked. (*Id.*) Leprino Foods has a Workplace Security Policy, also known as its Workplace Violence Policy, which provides that "any action, which in management's opinion, is inappropriate to the workplace will not be tolerated. . . . The Human Resources Manager for the location will investigate complaints and take action management believes is appropriate when employees are found to have engaged in the above conduct." *See* (*id*. at 1, 5).

Plaintiff Nicolas Donez was hired by Leprino Foods on November 3, 1998, for the position of bagger in the Whey Department at the Fort Morgan Plant. (*Id*. at 2, 25.) After approximately 10 years on the job, Plaintiff was promoted to the position of foreperson of the Whey Department. Plaintiff worked as a foreperson from 2008 until his termination on February 29, 2016. (*Id*. at 2.)

On February 9, 2016, a heavily disputed incident took place between Plaintiff and a lactose operator, Frank Levar, which left Plaintiff hospitalized. It is undisputed that Mr. Levar pushed Plaintiff and that Plaintiff pushed Mr. Levar in response. Plaintiff alleges that he pushed Mr. Levar in self-defense, and Defendant contends that Plaintiff

---

[1] The exhibits to Doc. ## 41, 46, and 50, and the conventionally submitted materials at Doc. ## 42 and 54, constitute the record in this matter for the purposes of this Order. The Court cites to the docket number of the exhibit and the page number of the corresponding party's appendix (e.g., Doc. # 41-2 at 249).

escalated the altercation by pushing Mr. Levar. Plaintiff was found unconscious and taken to the hospital.

Mr. Levar was terminated on February 11, 2016, in a letter that stated: "you did admit to us you punched [Plaintiff.] Leprino Foods Company has zero tolerance for workplace violence." (*Id*. at 59.) Plaintiff was terminated on February 29, 2016, in a letter that stated: "During our investigation you verbally admitted to us you pushed your operator. Leprino Foods Company has no tolerance for workplace violence." (*Id*. at 60.) Plaintiff was terminated 20 days after applying for workers' compensation.

Plaintiff initiated the instant action on February 1, 2019, after filing a discrimination charge with the EEOC. Plaintiff asserts two claims against Defendant—i.e., a Title VII claim for race discrimination and a Colorado state law claim for wrongful termination in violation of public policy. (Doc. # 1.) As to his second claim, Plaintiff asserts that Defendant terminated him in violation of public policy under two theories: (1) that Defendant terminated him in retaliation for applying for workers' compensation benefits, and (2) that Defendant terminated him for acting in self-defense. Defendant moves for summary judgment as to all claims. The Motion is ripe for the Court's review. *See* (Doc. ## 41, 46, 50).

## II.   LEGAL STANDARD

Summary judgment is warranted when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Turnkey Sols. Corp. v. Hewlett Packard Enter. Co.*, No. 15-cv-01541-CMA-CBS, 2017 WL 3425140, at *2 (D. Colo. Aug. 9, 2017). A fact is "material" if it is

essential to the proper disposition of the claim under the relevant substantive law. *Id.* A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Id.* In reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

      The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

      Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in her favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d

1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III.   ANALYSIS

**A.   TITLE VII CLAIM**

    1.   Relevant Law

The *McDonnell–Douglas* burden-shifting test applies to a Title VII claim where there is no direct evidence of discrimination. *See McDonnell–Douglas Corp. v. Green,* 411 U.S. 792 (1973); *see also Garrett v. Hewlett–Packard Co.,* 305 F.3d 1210, 1216 (10th Cir. 2002). Under *McDonnell–Douglas,* a plaintiff must first establish a *prima facie* case of employment discrimination, 411 U.S. at 802, by showing that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. *EEOC v. PVNF, LLC,* 487 F.3d 790, 800 (10th Cir. 2007). If a plaintiff can show that similarly situated non-minority employees were treated more favorably, this gives rise to an inference of discrimination that satisfies the plaintiff's *prima facie* burden. *Id.* at 800–01; *English v. Colo. Dep't of Corrs.,* 248 F.3d 1002, 1011 (10th Cir. 2001) (citing *Hardy v. S.F. Phosphates Ltd. Co.,* 185 F.3d 1076, 1082 (10th Cir. 1999)).

If the plaintiff makes out a *prima facie* case, the burden shifts to the defendant to come forward with a legitimate, nondiscriminatory basis for its employment

decision. *See* 411 U.S. at 802. If the defendant does so, the inference of discrimination drops out and the burden shifts back to the plaintiff.

The plaintiff, then, must offer evidence to show that the defendant's non-discriminatory reason was merely pretext. *See id.* at 804. Here, "[t]he relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City and County of Denver*, 365 F.3d 912, 924 (10th Cir. 2004) (quoting *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1318 (10th Cir. 1999), *overruled on other grounds by National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002)). "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997). A plaintiff may also show pretext by providing evidence that he was treated differently from other similarly situated, nonprotected employees who violated work rules of comparable seriousness, *Smothers v. Solvay Chems., Inc.,* 740 F.3d 530, 540 (10th Cir. 2014), or through "evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

2. <u>Analysis</u>

Defendant concedes that Plaintiff is a member of a protected class and suffered

an adverse employment action. Therefore, only the third element of Plaintiff's discrimination claim is at issue—i.e., that Plaintiff's termination took place under circumstances giving rise to an inference of discrimination. *PVNF,* 487 F.3d at 800. Against the aforementioned backdrop of the law, and upon review of the briefing and pertinent record, the Court determines that several genuine disputes of material fact exist and warrant denial of Defendant's Motion for Summary Judgment as to Plaintiff's discrimination claim.

With regard to Plaintiff's *prima facie* case, the parties genuinely dispute whether Plaintiff was treated less favorably than similarly situated, non-minority employees. Plaintiff points to evidence that two such employees were reprimanded less harshly for conduct of comparable seriousness. First, Plaintiff points to evidence that Defendant did not reprimand Mr. Levar when he previously yelled at and pushed another employee in violation of company policy. *See* (Doc. # 46-2 at 309–11). Second, Plaintiff provides evidence that another Leprino Foods employee, Shawn Morrison, was given a warning—but not terminated—for engaging in "horseplay" with other employees in violation of company policy after at least two employees complained about his behavior.[2] (*Id*. at 436.); *compare* (*id*.) (written warning for Shawn Morrison) *with* (*id*. at 438) (letter of termination to Hispanic employee Crystal Campos that states "Leprino Foods Company has no tolerance for inappropriate touching in the workplace.").

---

[2] Mr. Morrison's behavior included putting employees in chokeholds and lifting one female employee up onto his shoulder and placing his hand on her buttock.

Whether the conduct engaged in by Mr. Levar and Mr. Morrison is of comparable seriousness to Plaintiff's conduct is a question for the jury to decide.

The parties also genuinely dispute whether Defendant's proffered reason for terminating Plaintiff was pretextual, including whether Defendant genuinely believed Plaintiff escalated the altercation at the time of Plaintiff's termination. Plaintiff points to various pieces of indirect evidence that could lead a rational jury to believe that Defendant's proffered reason for terminating Plaintiff was pretextual. For example, Plaintiff submits an email from Kelly Soja, Leprino Foods' Production Division Human Resources Manager, to Julia Lambert, Human Resources Generalist at the Fort Morgan Plant, that states: "If we don't get that detective's statement on what Nic [Donez] said to him, we probably can't term him." (Doc. # 46-2 at 385.) Additionally, Defendant asserts that it relied on the Fort Morgan Police Department ("FMPD") reports in deciding to terminate Plaintiff, but the FMPD reports refer to Plaintiff as "the victim" and Mr. Levar as "the suspect," FMPD investigated Mr. Levar, and not Plaintiff, for assault, and Detective Steve Vosburg listed Plaintiff's injuries caused by Mr. Levar in his first report. *See* (Doc. # 41-1 at 81–84). This evidence could lead a rational jury to believe that Defendant understood from the FMPD investigation that Plaintiff was the victim of an attack and not a willing participant in a fight.

## B. WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY CLAIM

### 1. Relevant Law

Under Colorado law, either the employer or the employee may terminate at-will employment at any time with or without cause, and such termination generally does not

give rise to a claim for relief. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987). However, Colorado law recognizes a public-policy exception to the at-will employment doctrine. *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100, 102 (Colo. 1992) ("a claim for wrongful discharge under the public-policy exception to the at-will employment doctrine is cognizable in Colorado"). In order to state a claim for wrongful discharge in violation of public policy, a plaintiff must prove:

1. that the employer directed the employee to perform an illegal act as part of the employee's work[-]related duties **or prohibited the employee from** performing a public duty or **exercising an important job-related right or privilege**;

2. that the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or the employee's right or privilege as a worker;

3. that the employee was terminated as the result of refusing to perform the act directed by the employer [or as the result of performing a public duty or exercising an important job-related right or privilege]; and

4. that the employer was aware, or reasonably should have been aware, that the employee's refusal to comply with the employer's order or directive was based on the employee's reasonable belief that the action ordered by the employer was illegal, contrary to clearly expressed statutory policy relating to the employee's duty as a citizen, or violative of the employee's legal right or privilege as a worker.

*Id.* (emphasis added).

To warrant an exception to at-will employment, the statutory, constitutional, or other provision giving rise to the public policy must "be sufficiently concrete to notify employers and employees of the behavior it requires." *Rocky Mountain Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519, 525 (Colo. 1996). Plaintiff bears the burden of proving

that the public-policy exception applies. *Jaynes v. Centura Health Corp.*, 148 P.3d 241, 243 (Colo. App. 2006), *as modified on denial of reh'g* (June 29, 2006) (citing *Pickell v. Ariz. Components Co.,* 931 P.2d 1184 (Colo. 1997)).

One of three recognized rationales for invoking the public-policy exception under Colorado law is relevant to Plaintiff's public-policy claim: an employee should not be terminated because of the employee's exercise of a job-related right or privilege granted to workers.[3]

Under this rationale, the employee must prove that the employer's action "would violate a *specific statute* relating to the public health, safety, or welfare, or would undermine a *clearly expressed public policy* relating to the employee's rights as a worker." *See Mariani*, 916 P.2d at 524 (quoting *Lorenz*, 823 P.2d at 109) (emphasis in *Mariani*). The job-related right or privilege rationale was first recognized in *Lathrop v. Entenmann's, Inc.,* 770 P.2d 1367 (Colo. App. 1989), in which the Colorado Court of Appeals recognized a claim for wrongful discharge where an employer retaliated against an employee for exercising his right to workers' compensation benefits. The *Lathrop* court reasoned that allowing an employer to terminate an employee for exercising their right to workers' compensation would "open the doors to coercion and

---

[3] The earliest and predominant rationale for the public-policy exception is that "employees should not be forced to choose between losing their jobs or engaging in criminal conduct." *See, e.g.*, *Lorenz*, 823 P.2d at 111 (holding that an employee established a *prima facie* public-policy case where he was terminated for refusing to violate a federal statute); *see also Mariani,* 916 P.2d at 527; *Montoya v. Local Union III of Int'l Bhd. of Elec. Workers,* 755 P.2d 1221 (Colo. App. 1988). The remaining rationale is that an employee should not be terminated because of the employee's performance of an important public obligation, such as jury duty. *See Lorenz*, 823 P.2d at 107 (citing *Nees v. Hocks*, 536 P.2d 512 (Or. 1975)).

other duress-provoking acts" by employers and thereby "undermine the fundamental purposes of the workmen's compensation system." *Id*. at 1373. The court concluded that "since an employee is granted the specific right to apply for and receive compensation under the Act, an employer's retaliation against such an employee for his exercise of such right violates Colorado's public policy." *Id.*

Since *Lathrop*, however, Colorado courts have been reluctant to find a public-policy exception on this "job-related right or privilege" basis. In *Crawford Rehabilitation Services, Inc. v. Weissman*, 938 P.2d 540, 552–53 (Colo. 1997), the Colorado Supreme Court held that termination of an employee for exercising her right to take rest breaks pursuant to the Colorado Wage Order and for reporting her employer to the Colorado Department of Labor and Employment did not violate public policy. The court concluded that "[a]ny interest Weissman may have pursuant to the Wage Order in taking ten[-]minute rest breaks does not rise to the level of a public-policy mandate susceptible to private enforcement." *Id.* at 553. The court reiterated that public policy "must concern behavior that truly impacts the public in order to justify interference into an employer's business decisions," *id.* at 552 (quoting *Mariani*, 916 P.2d at 525), and cautioned that the public-policy exception should be applied sparingly:

> Not all potential sources of public policy are of sufficient gravity to outweigh the precepts of at-will employment. We must develop the common law in this area with care. The General Assembly is the branch of government charged with creating public policies, and the courts may only recognize and enforce such policies.

*Id.* at 553.

2. <u>Analysis</u>

Plaintiff asserts a claim for wrongful discharge in violation of public policy ("public-policy claim") under two theories. First, Plaintiff claims that Defendant wrongfully terminated him in retaliation for asserting his right to apply for and receive workers' compensation benefits. Second, Plaintiff claims that Defendant wrongfully terminated him for asserting his right to self-defense. Defendant has moved for summary judgment on both theories. The Court considers each theory in turn.

    a.    *Workers' Compensation*

Defendant first moves for summary judgment on Plaintiff's public-policy claim on the basis that Plaintiff provides no evidence of a causal connection between his application for workers' compensation benefits and his termination. Plaintiff responds that the temporal proximity between his application for benefits and his termination establishes a causal connection sufficient to survive summary judgment. *See* (Doc. # 46 at 18).

Plaintiff cites to *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164 (10th Cir. 2006), to support his position that temporal proximity alone warrants a denial of summary judgment as to his workers' compensation retaliation theory.[4] Pursuant to

---

[4] Colorado precedent does not clearly define what standard should apply to the causation element of Plaintiff's public-policy claim. *See Wehrley v. Am. Family Mut. Ins. Co.*, 513 F. App'x 733, 744 (10th Cir. 2013) ("Colorado's case law regarding this claim is not well developed, but the claim at the very least requires evidence of a causal connection between the exercise of worker's compensation rights and the firing.") (citing *Lathrop v. Entenmann's, Inc.*, 770 P.2d 1367, 1372–73 (Colo. Ct. App. 1989)). As Plaintiff cites to *Metzler* to support his case and the Tenth Circuit applied the *McDonnell–Douglas* test in *Metzler*, the Court applies the *McDonnell–Douglas* burden-shifting test to Plaintiff's public-policy claim. However, the Court would reach

*Metzler,* temporal proximity is sufficient to satisfy the causation element of a plaintiff's *prima facie* retaliation case. 464 F.3d at 1171 ("temporal proximity between protected conduct and termination [is] relevant evidence of a causal connection sufficient to 'justify an inference of retaliatory motive.'") (quoting *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006)).

However, temporal proximity alone is insufficient to establish pretext and, thus, cannot defeat summary judgment where the defendant has articulated a legitimate reason for the plaintiff's termination:

> Although temporal proximity is one relevant factor to be considered by the courts in determining whether the employer's explanation is a pretext for retaliation, this court has refused to allow even "'very close' temporal proximity to operate as a proxy for th[e] evidentiary requirement" that the plaintiff demonstrate pretext. *Annett v. Univ. of Kan.,* 371 F.3d 1233, 1241 (10th Cir. 2004); *Medina v. Income Support Div.,* 413 F.3d 1131, 1138 (10th Cir. 2005) ("[Temporal proximity] is not alone sufficient to defeat summary judgment.") (quotations omitted). To raise a fact issue of pretext, Metzler must therefore present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive. *See, e.g., Pastran v. K-Mart Corp.,* 210 F.3d 1201, 1206-07 (10th Cir. 2000).

*Metzler*, 464 F.3d at 1172 (emphasis in original).

In the instant case, Defendant has articulated a legitimate reason for Plaintiff's termination—i.e., that Plaintiff violated company policy by participating in an incident of

---

the same result if it considered whether a rational jury could find that causation exists considering the totality of evidence before the Court. *See Wehrley*, 513 F. App'x at 744 (concluding the plaintiff introduced insufficient evidence of causation to overcome the defendant's stated reason for termination, so the defendant was entitled to summary judgment on his public-policy claim).

workplace violence. Therefore, pursuant to *Metzler*, Plaintiff must provide evidence of pretext—or temporal proximity plus circumstantial evidence of retaliatory motive—to survive summary judgment. However, Plaintiff solely presents evidence of temporal proximity and fails to present any circumstantial evidence of retaliatory motive.[5] Further, Defendant points to evidence that cuts against Plaintiff's retaliation claim, including that Leprino Foods employee Risa Esterly-Wessbecker brought workers' compensation paperwork to Plaintiff at the hospital on the day of the altercation. *See* (Doc. # 41-1 at 17–18). Pursuant to *Metzler,* Defendant is entitled to summary judgment on this claim. *See also Wehrley v. Am. Family Mut. Ins. Co.*, 513 F. App'x 733, 743 (10th Cir. 2013).

      b.    Self-Defense

Plaintiff's second theory of relief is that Defendant wrongfully discharged him in violation of public policy by terminating him for engaging in self-defense in the workplace. Whether a plaintiff may state a public-policy claim for self-defense is a matter of first impression in Colorado and a question of law to be decided by this Court. *See Mariani*, 916 P.2d at 524 ("The identification of the statutory or constitutional

---

[5] In his deposition testimony, Plaintiff confirmed that the evidence supporting this claim is limited to temporal proximity:

> Q: Okay. And other than the fact that your employment was terminated several weeks after filing the workers' compensation claim, you don't have any other facts to support your claim that your termination was in any way related to the filing of that claim, do you?
> A: No.

(Doc. # 41-1 at 25.)

provisions that qualify as clear expressions of public policy is a matter for judicial determination.").

Plaintiff argues that several sources of authority in Colorado establish a public policy in favor of self-defense that is strong enough to create an exception to at-will employment.[6] Plaintiff cites to only one Colorado public-policy claim case to support his theory. Looking to the Colorado Supreme Court's holding and hesitation to apply the public-policy exception in *Crawford*, as well as the court's articulation of the purpose behind the public-policy exception in *Lorenz*, this Court is unpersuaded by Plaintiff's arguments. The Court finds that Plaintiff cannot state a claim for wrongful discharge in violation of public policy on the basis of self-defense.

First, Plaintiff's sources of authority are insufficiently specific to produce a public-policy exception. The Colorado Supreme Court has repeatedly emphasized the importance of limiting the public-policy exception to circumstances in which employers are on notice. *See, e.g.*, *Lorenz*, 823 P.2d at 109 (in order to establish a *prima facie* case, the employee must prove that "the action directed by the employer would violate a **specific statute** relating to the public health, safety, or welfare, or would undermine a **clearly expressed public policy** relating to the employee's basic responsibility as a

---

[6] Plaintiff cites two provisions of the Colorado Constitution—i.e., Article II, Section 3, which grants the inalienable right "of seeking and obtaining . . . safety and happiness," and Article III, Section 13, which provides for the right to "keep and bear arms in defense of . . . home, person and property." C.R.S.A. Const. Art. 2, §3; 3, §13. In addition, Plaintiff cites to several sources of authority concerning the impact of self-defense on a defendant's **criminal liability**, including two criminal law cases and C.R.S. § 18-1-704(2), a provision of the Colorado Criminal Code that authorizes the use of deadly force by a non-aggressor.

citizen or the employee's rights as a worker....") (emphases added); see also *Lathrop*, 770 P.2d 1367 (applying public-policy exception where workers' compensation statute specifically required that employers pay benefits to injured employees). Falling far short of this requirement, Plaintiff relies, *inter alia*, on broad constitutional rights to seek safety and to bear arms. These authorities are not "sufficiently concrete to notify employers and employees of the behavior it requires" and do not "provide a clear mandate to act or not to act in a particular way." *Mariani*, 916 P.2d at 525. Therefore, they do not constitute clearly expressed public policy warranting an exception to at-will employment.

Further, the Colorado Supreme Court has indicated that the connection between the employee's right or privilege and his employment is important. *See, e.g.*, *Lorenz*, 823 P.2d at 109–11 (referring to a "**job-related** right or privilege" or a "statutory right or privilege **granted to workers**," requiring an employee to prove that the employer's action "would undermine a clearly expressed public policy relating to . . . **the employee's rights as a worker**," and framing a question before the court as whether the source of policy created a "specific statutory proscription **relating to [the employee's] duties or responsibilities as a[n] . . . employee**, rather than merely being contrary to a broad and general statement of public policy" (emphases added)). Plaintiff fails to establish this connection, as the generally applicable constitutional provisions and criminal law he points to are, at best, tenuously connected to his employment.

Plaintiff encourages the Court to adopt the analyses of other jurisdictions[7] to find a public-policy exception for self-defense in the workplace, but he has failed to articulate how said cases comport with Colorado's restrictive precedent on the public-policy exception. Ultimately, Plaintiff bears the burden of proving that the public-policy exception applies to self-defense, *see Jaynes*, 148 P.3d at 243, and Plaintiff has not carried his burden.

## IV.    CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's Motion for Summary Judgment (Doc. # 41) is GRANTED as to Plaintiff's wrongful discharge in violation of public policy claim and DENIED as to Plaintiff's Title VII claim for discrimination.

DATED: April 20, 2020

BY THE COURT:

_Christine M. Arguello_
CHRISTINE M. ARGUELLO
United States District Judge

---

[7] *See Ray v. Wal-Mart Stores, Inc.*, 359 P.3d 614 (Utah 2015); *Feliciano v. 7-Eleven, Inc.*, 210 W. Va. 740, 559 S.E.2d 713 (2001); *Cocchi v. Circuit City Stores*, 2006 WL 870736 (N.D.Cal. Apr. 3, 2006).