```
DISTRICT COURT, MORGAN COUNTY, COLORADO    |
400 Warner Street                          |
Fort Morgan, CO 80701                      |
(970)542-3435                              |
_____|
PEOPLE OF THE STATE OF COLORADO            |
v.                                         |
FRANK DONALD LEVAR, Defendant.             |*COURT USE ONLY*
_____|_____
                                           |
For the People:                            |Case No. 16CR36
Rebecca R. Wiard, Esq.                     |
Deputy District Attorney                   |
400 Warner Street                          |
Fort Morgan, CO 80701                      |
(970)542-3420                              |
                                           |
For the Defendant:                         |
Paul Wiese, Esq.                           |
The Law Firm of Paul Wiese, L.L.C.         |
109 East Railroad Avenue                   |
Fort Morgan, CO 80701                      |
(970)370-2292                              |
_____|_____
```

Reporter's Transcript
Jury Trial
October 5, 2016
_____

THIS MATTER comes on for Jury Trial on October 5, 2016, at 8:35 a.m., before HONORABLE MICHAEL K. SINGER, District Court Judge.

Ashton N. Goethe, RPR

EXHIBIT 2

1                                 INDEX
2    **WITNESS NAME**                                                   **Page**
3         Steve Vosburg
              Direct Examination by Ms. Wiard................  3
4             Cross-Examination by Mr. Wiese.................. 21
              Redirect Examination by Ms. Wiard............. 32
5         Thomas Lopez
              Direct Examination by Ms. Wiard............... 35
6             Cross-Examination by Mr. Wiese................. 40
          Richard Tucker
7             Direct Examination by Ms. Wiard............... 41
              Cross-Examination by Mr. Wiese................. 47
8             Redirect Examination by Ms. Wiard............. 50
          David Ocanas
9             Direct Examination by Ms. Wiard............... 52
              Cross-Examination by Mr. Wiese................. 57
10            Redirect Examination by Ms. Wiard............. 59
11
12
13
14
15
16
     **EXHIBITS**
17
     People's Exhibits No. 9 and 10 Entered into
18   Evidence....................................................  8
     People's Exhibit No. 17 Entered into Evidence........... 14
19   People's Exhibit No. 11 Entered into Evidence........... 17
     People's Exhibits No. 12 and 13 Entered into
20   Evidence................................................... 19
21
22
23
24
25

Ashton N. Goethe, RPR

EXHIBIT 2

```
 1              THE COURT:  People may call their next witness.
 2              MS. WIARD:  Thank you, Judge.  People call Shane
 3   Tucker.
 4              THE COURT:  Once again, ladies and gentlemen,
 5   certain evidence may be admitted for a particular purpose
 6   only and for no other.  Witness testimony regarding
 7   allegations of prior assaults by the defendant is such
 8   evidence.  You are about to hear such evidence.  It may be
 9   used for the purpose of showing the defendant's mental state
10   and motive at the time of the incident as related to
11   self-defense, and you should consider it for no other
12   purpose.
13                          RICHARD TUCKER
14   was called as a witness and, having been sworn, was examined
15   and testified as follows:
16                        DIRECT EXAMINATION
17   BY MS. WIARD:
18         Q     Good afternoon.
19         A     Good afternoon.
20         Q     Could you state your name and spell your
21   last name.
22         A     Richard Shane Tucker, T-u-c-k-e-r.
23         Q     What's your occupation?
24         A     I work in the oil field.
25         Q     How long have you been in the oil field?
```

Ashton N. Goethe, RPR

EXHIBIT 2

```
 1         A    Two years now.
 2         Q    Prior to the oil field did you work at
 3   Leprino Foods?
 4         A    Prior to the oil field I worked at Wolf
 5   Waste Removal.
 6         Q    Oh, Wolf?  Okay.
 7         A    Yes.  And then before Wolf it was Leprino.
 8         Q    When was your I guess last day, or the last
 9   time that you were working at Leprino?
10         A    It was in July of 2013.
11         Q    When you worked at Leprino did you also work
12   with Frank Levar?
13         A    Yes, I did.
14         Q    How long did you work with him?
15         A    It was a good 10, 12 years at least.
16         Q    What department were you in?
17         A    We were both in the weigh department.
18         Q    And how often did you interact with the
19   defendant?
20         A    Every day.
21         Q    Now, when you worked with the defendant in
22   2013 I'm assuming; is that correct?
23         A    Yes.
24         Q    What was your position?
25         A    It was a weigh department foreman.
```

Ashton N. Goethe, RPR

EXHIBIT 2

```
 1              Q     And as a foreman was the defendant beneath
 2     you, or did he have to report to you?
 3              A     Beneath me.  Yes, he did report to me.
 4              Q     So you had to supervise him to some degree;
 5     is that correct?
 6              A     Yes.
 7              Q     Now, was there an incident that occurred
 8     between you and Frank Levar back I believe somewhere in the
 9     neighborhood of 2013 or prior to that?
10              A     It was before that.  It was 2010 or '11.
11              Q     Okay.  But there was an incident?
12              A     There was an incident, yes.
13              Q     Where did that happen?
14              A     That happened in the weigh department
15     supervisor's office.
16              Q     And what happened?
17              A     I was in the office with a supervisor and
18     Frank walked in and said I'm going to lunch, watch my stuff.
19     And I stopped him and told him that -- asked him if his
20     break relief was watching his equipment.  He's like no, you
21     guys watch it, I'm going to lunch.  And I stopped him again
22     and said Frank, you can't go to lunch without the proper
23     relief.  And he was like fuck you, man, I'm going to lunch.
24              I got out of my seat and walked over to Frank and
25     was like dude, don't ever talk to me like that.  You are not
```

Ashton N. Goethe, RPR

EXHIBIT 2

```
 1   going to lunch until you've got proper relief.  He's like
 2   fuck you, man, I'm going to lunch.  He pushed me like that
 3   (indicated) and then left.
 4          Q    Now, when you got up and approached him --
 5   and again, you were in the supervisor's office?
 6          A    In the supervisor's office, yes.
 7          Q    When you got up and approached him where
 8   were your hands?
 9          A    When I walked up to Frank I put my hands in
10   my pocket.
11          Q    Okay.  How close did you get to him when you
12   went up to him?
13          A    It was within a foot or two.
14          Q    And you used a motion with your hands.  Did
15   he actually put hands on you?
16          A    Yeah, he did.  When I said don't you ever
17   talk to me like that he said fuck you, motherfucker, I'm
18   going to lunch.  He put his hands and pushed me in the
19   chest.  I went backward.  I'm pretty sure my hands came out
20   of my pocket and I shoved them back in and he left.
21          Q    Now, what happened after that?
22          A    After that I looked down at the supervisor
23   and said aren't you going to do anything about that, and we
24   talked about that for a minute.  And he wasn't going to do
25   anything, so I waited a few minutes and went up to HR to
```

Ashton N. Goethe, RPR

EXHIBIT 2

1  discuss it with the HR manager.  And they had told me that
2  Frank was already up there and discussed that with them,
3  too.  And I asked them what they were going to do about it
4  and they didn't seem like they were going to do anything.
5  They just said Frank was being Frank.
6         Q    Now, are you -- you said your supervisor was
7  present.  Was anyone else present who witnessed this?
8         A    No one was in the supervisor's office, but
9  there was somebody that witnessed it in the bagging room.
10 And that's just right directly adjacent with the office.
11 There's a big window and you see right in there.
12        Q    The bagging room was adjacent to where you
13 were?
14        A    Yes.
15        Q    And there's a window from the bagging room
16 into the office where you work?
17        A    Yes.
18        Q    Who was the person who witnessed this?
19        A    David Ocanas.
20        Q    Did the defendant confront you -- or not
21 confront you, but come up to you later in the day?
22        A    Yes, he did.
23        Q    And what did he say when he came up to you
24 later in the day?
25        MR. WIESE:  And Judge, I would object.  I think


Ashton N. Goethe, RPR


EXHIBIT 2

```
 1   that's beyond the scope of what this has been admitted for.
 2               THE COURT:  Could you please approach, both of
 3   you.  I'd appreciate that.
 4               (The following proceedings were conducted at the
 5   bench and outside the presence and hearing of the jury:)
 6               THE COURT:  So didn't hear this before Judge has
 7   made the ruling, and I don't have what it is that you're
 8   trying to get out of this.
 9               MS. WIARD:  He just came up later and apologized,
10   the defendant did.  That's how it ended.
11               THE COURT:  Okay.  Mr. Wiese, any further record
12   you want me to make on that?
13               MR. WIESE:  I guess my concern is, Judge, that I
14   can look through the transcript, but my understanding is the
15   statement from Mr. Tucker is Frank said I fucked up and I'm
16   sorry.  If it's only that he apologized that's fine.
17               MS. WIARD:  I can rephrase it and just ask if he
18   apologized.
19               THE COURT:  With a leading question.
20               MR. WIESE:  I will allow a leading question of did
21   he apologize.
22               MS. WIARD:  That's fine.
23               THE COURT:  Okay.
24               (The following proceedings were conducted in the
25   presence and hearing of the jury:)
```

Ashton N. Goethe, RPR

EXHIBIT 2

```
 1                THE COURT:  You may rephrase it.
 2                Q     (By Ms. Wiard) So later in the day did the
 3     defendant come up to you and apologize?
 4                A     Yes, he did.
 5                Q     And do you see Frank Levar in court today?
 6                A     Yes, I do.
 7                Q     Would you please point him out by an article
 8     of clothing that he's wearing.
 9                A     He's wearing a baby blue long sleeve shirt.
10                Q     Thank you.
11                MS. WIARD:  If the record could reflect the
12     witness has identified the defendant.
13                THE COURT:  Subject to cross-examination it will
14     so reflect.
15                MS. WIARD:  Thank you.  I have nothing further.
16                THE COURT:  Thank you.  Cross-examination?
17                            CROSS-EXAMINATION
18     BY MR. WIESE:
19                Q     Now, Mr. Tucker, just to clarify a couple of
20     things.  So you had been sitting down when Mr. Levar came
21     into the office?
22                A     Yes.
23                Q     And then after he made these statements you
24     got up and you stepped up to him, and that was a distance of
25     approximately one foot you said?
```

Ashton N. Goethe, RPR

EXHIBIT 2

```
 1              A     It was pretty close.
 2              Q     Okay.  And of course he was being
 3    disrespectful to you so you, in fact, weren't happy that
 4    he'd come into the office and demanded to go on break;
 5    correct?
 6              A     Yes.
 7              Q     Okay.  Because you didn't believe he was
 8    following proper procedure; correct?
 9              A     That's true.
10              Q     Okay.  And you were upset with him at that
11    point for the way he was handling this; correct?
12              A     To a certain extent, yes.
13              Q     And you just testified that when you stood
14    up your hand were in your pockets; correct?
15              A     They ended up in my pockets.
16              Q     When you first got up?
17              A     When I first got up I'm not sure if they
18    were in my pocket right then or not.  But I know that as I
19    got to Frank they were in my pocket.
20              Q     Okay.  And then if I understand your
21    testimony it's that when you were pushed back your hands
22    came out of your pocket and you put them back in; correct?
23              A     Yes.
24              Q     Okay.  Now, you in fact have been asked this
25    similar line of questions in some previous court hearings;
```

Ashton N. Goethe, RPR

EXHIBIT 2

```
 1   correct?
 2           A     That's correct.
 3           Q     And in that previous court hearing in August
 4   you were under oath at that time?
 5           A     Yes.
 6           Q     Okay.  And at that time you didn't say
 7   anything about your hands leaving your pocket for a minute
 8   and then going back in, did you?
 9           A     No, I didn't.
10           Q     And you also remember talking to the
11   gentleman seated at my table, Mr. Bill Evans?
12           A     Yes.
13           Q     And that was back in April of 2016; correct?
14           A     That's correct.
15           Q     And when you were talking to Mr. Evans you
16   told him that you kept your hands in your pockets the entire
17   time so as not to be accused of being physical with Frank;
18   correct?
19           A     That is correct.
20           Q     And ultimately -- ultimately -- well, also
21   when you were talking to Mr. Evans back in August you told
22   him honestly I got too close and he pushed me; correct?
23           A     Yeah, I think so.
24           Q     And when you went up to HR not only -- when
25   you went up to HR it was ultimately found that you had been
```

                         Ashton N. Goethe, RPR

EXHIBIT 2

1  aggressive and that's why they did not do anything to
2  Mr. Levar; correct?
3          A    I'm not sure if that's the proper term for
4  it or not.  What they told me is that I probably instigated
5  by walking up to him.
6          Q    But that was their term was that you had
7  instigated it?
8          A    That's their term.
9          MR. WIESE:  If I can have just a second, Judge?
10         THE COURT:  Sure.
11         MR. WIESE:  Judge, I have nothing further.
12         THE COURT:  Thank you.
13         Any redirect?
14         MS. WIARD:  Yes, Judge.
15                    REDIRECT EXAMINATION
16 BY MS. WIARD:
17         Q    Regarding the statement that you instigated
18 it, as an employee or as a foreman are you required to make
19 sure your employees understand the rules and observe those
20 rules?
21         A    Absolutely.
22         Q    In your years as a foreman did you ever have
23 an employee use that type of language at you before?
24         A    No.
25         Q    Have you ever had an employee lay his hands


Ashton N. Goethe, RPR

EXHIBIT 2

```
 1   on you before?
 2            A    Never.
 3            THE COURT:  All right.  Any jury questions?
 4            All right.  Thank you very much.  You may step
 5   down.
 6            May this witness be released from his subpoena?
 7            MS. WIARD:  Yes, Judge.
 8            THE COURT:  Mr. Wiese, any objection to that?
 9            MR. WIESE:  No, Judge.
10            THE COURT:  Very well.  You're free to go about
11   your business.
12            And free to call your next witness.
13            MS. WIARD:  People call Dave Ocanas.
14                      DAVID OCANAS
15   was called as a witness and, having been sworn, was examined
16   and testified as follows:
17            THE COURT:  Ladies and gentlemen, once again
18   certain evidence may be admitted for particular purposes
19   only and no other.  The testimony you're about to hear
20   regarding an allegation of a prior assault by the defendant
21   is such evidence.  It may be used as evidence for the
22   purpose of showing the defendant's mental state and motive
23   at the time of the incident before us as related to
24   self-defense and you should consider it for no other
25   purpose.
```

Ashton N. Goethe, RPR

EXHIBIT 2