**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-00285

NICOLAS DONEZ,

     Plaintiff,

v.

LEPRINO FOODS COMPANY,

     Defendant.

---

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE

---

Plaintiff, Nicolas Donez, though counsel, Amy K. Burma, of Burma Law Offices, LLC, hereby submits his Response in Opposition to Defendant's Motions in Limine.  As grounds therefor, Plaintiff states as follows:

### "OTHER ACTS" EVIDENCE

This Court's Order Granting in Part and Denying In Part Defendant's Motion for Summary Judgment ("MSJ Order') states: "Whether the conduct engaged in by Mr. Levar and Mr. Morrison is of comparable seriousness to Plaintiff's conduct is a question for the jury to decide." [Doc. 59, MSJ Order, p. 8].  Nevertheless, Defendant seeks to seeks to exclude "other acts" evidence, rehashing arguments made - and rejected - in its summary judgment briefing.   It is beyond cavil that such facts are more probative than prejudicial, as Defendant's treatment of similarly situated comparators is one of the basic methods of indirectly establishing intent in an employment-related case.   Defendant's position not only ignores the Court's MSJ Order, but seeks to creates an insurmountable standard, as evidenced by the fact that Defendant seeks to exclude *all* comparators.

A.      **Evidence Is Relevant to Issue of Intent**

"Other acts" evidence in employment-discrimination cases provides circumstantial evidence of the employer's motive or intent to discriminate, which is a permissible use of such evidence under Rule 404(b).  *See Nuskey v. Hochberg*, 723 F.Supp.2d 229, 233 n. 2 (D.D.C. 2010); *Spulak v. K Mart Corp*., 894 F.2d 1150, 1156 (10th Cir.1990), disapproved on another point in *Hazen Paper Co. v. Biggins* 507 U.S. 604, 615–616 (1993) "[a]s a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent").

Courts admit this type of evidence frequently, upon the proper showing.   In *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 380–81, 387, 128 S.Ct. 1140, 170 L.Ed.2d 1 (2008), the United States Supreme Court held that testimony by nonparty employees about discrimination can be relevant in a single-act discrimination case and that any per se exclusion of such evidence would constitute an abuse of discretion. The admissibility of such evidence instead must be determined on a case-by-case basis. *Id*. This analysis, *Sprint* directs, is "fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Id*. at 388, 128 S.Ct. 1140.

In *Goldsmith v. Bagby Elevator Co*., Inc., 513 F.3d 1261, 1286-7 (11th Cir. 2008), the court held, the other acts evidence was admissible, under Rule 404(b), to prove the intent of Defendant to discriminate and retaliate. *Id*., at 1286.  Likewise, the Court held the information was admissible to determine "whether the antidiscrimination and antiretaliation policies of [Defendant] were effective." *Id*., at 1287.  The court permitted the evidence under 404(b) to demonstrate the unlawful intent and despite the fact that the adverse employment action occurred in circumstances that were very different from that of the plaintiff.  *Id*. at 1286. *See also Buckley v. Mukasey*, 538 F.3d 306,

319 (4th Cir. 2008) (the Court determined that evidence of retaliatory motive is relevant under Fed.R.Evid. 401 and is admissible under 404(b)).

As discussed further below, the other incidents in which four Caucasian employees received warnings and two Hispanic employees were terminated for the same thing – inappropriate physical contact with another employee. This evidence is directly relevant to Defendant's discriminatory motive and intent. Intent is difficult to prove by direct proof. As a result, the significant probative value of this evidence substantially outweighs the damage of unfair prejudice.

**B.    The Comparators are Similarly Situated Employees**

A plaintiff who wishes to show pre-text often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness. "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Riggs v. Airtran Airways*, Inc., 497 F.3d 1108, 1119 (10th Cir. 2007). The proper inquiry focuses on "whether there are sufficient commonalities on the key variables between Plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Id.* at 1117 (" '[W]hether two employees are similarly situated ordinarily presents a question of fact for the jury' ").

Contrary to Defendant's claims, there is no bright-line rule requiring "similar situated" employees to have the same supervisor or identical job duties as Plaintiff. It is just one of many factors to consider. *Coleman v. Donahoe*, 667 F.3d 835, 847-48 (7th Cir. 2012) (reversing summary judgment; allowing comparison of employees with different jobs and supervisors where same senior manager was responsible for deciding how to enforce same policy on violence against all employees). In *Griffin v. Finkbeiner*, 689 F.3d 584, 598–99 (6th Cir. 2012), the court found

error when the district court limited the introduction of comparators evidence only to the same decision-maker. The court observed,

> Whether the same actors are involved in each decision is a factor, but *Sprint* makes clear that it cannot be the only factor in the decision whether to admit "other acts" evidence. Notably, the testimony in *Sprint* involved supervisors "who played no role in the adverse employment decision challenged by the plaintiff." 552 U.S. at 380, 128 S.Ct. 1140, 170 L.Ed.2d 1. Here, the district court did not consider other ways in which the excluded evidence could be "related ... to the plaintiff's circumstances and theory of the case," *id*. at 388, 552 U.S. 379, 128 S.Ct. 1140, 170 L.Ed.2d 1, such as temporal and geographical proximity, whether the various decisionmakers knew of the other decisions, whether the employees were similarly situated in relevant respects, or the nature of each employee's allegations of retaliation.

*Id.* at 598–599.  All of the terminations and/or warnings, including Plaintiff's termination, involved the same Ron Cantwell, the Plant Aanager for the Fort Morgan Plant, the director of Human Resources Manager for the Fort Morgan plant,[1] and/or Julia Lambert, the Human Resources Supervisor.[2]   (Lambert Depo., 19:13-15, attached hereto as <u>Exhibit 1</u>).   Additionally, all the employees: (1) were subject to the same rules; (2) worked in the Production Division; (3) worked at the Fort Morgan plant; (4) were hourly employees that worked on the floor of the plant; (5) received similar training from Defendant; (6) had similar educational backgrounds.

It is remarkable that Defendant asks this Court to affirm that these incidents were so dissimilar that no rational jury could have found them to be similarly situated, where all were subject to the same workplace rules, engaged in similar conduct, were subject to discipline by the same group of relevant decision makers, and lack any other relevant difference which would prevent a meaningful comparison between them.

---

[1] Shane Cole was the director of Human Resources until approximately January 2015, at which time Risa Esterly replaced him.

[2] Defendant improperly claims that Risa Esterly was responsible to terminate Plaintiff.  However, Julia Lambert drafted Plaintiff's termination letter and Ron Cantwell, Risa Esterly, Steve Schmidt and Kelly Soja were all involved in the decision to terminate Plaintiff.   Schmidt Depo., 15:19-16:2, attached hereto as <u>Exhibit 2</u>.

### C.     The Incidents Are of Comparable Seriousness

Defendant's claim that the conduct is not of comparable seriousness is without merit. Comparators must have engaged in similar—not identical—conduct to qualify as similarly situated. *Elmore v. Capstan, Inc.*, 58 F.3d 525, 530 (10th Cir. 1995) ("When comparing the relative treatment of similarly situated minority and non-minority employees, the comparison need not be based on identical violations of identical work rules; the violations need only be of 'comparable seriousness.' "); *Ezell v. Potter*, 400 F.3d 1041, 1050 (7th Cir. 2005) (reversing summary judgment in relevant part; mail carrier accused of taking too long a lunch was similarly situated to another carrier who had lost a piece of certified mail).

To require identical conduct is to lose sight of the big picture, common-sense perspective and would create an insurmountable hurdle for any plaintiff. *Lynn v. Deaconess Medical Center– West Campus*, 160 F.3d 484, 488 (8th Cir.1998) ("To require that employees always have to engage in the exact same offense as a prerequisite for finding them similarly situated would result in a scenario where evidence of favorable treatment of an employee who has committed a different but more serious, perhaps even criminal offense, could never be relevant to prove discrimination."), *abrogated on other grounds, Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).

The cases that Defendant relies upon are distinguishable, as those cases involved evidence of physical incidents as well as non-physical incidents. In this case, all the incidents involved some type of unwanted physical contact with another employee: (1) Corey Gettman received a warning for "reoccurring horseplay that caused frustration for a co-worked" and involved touching of the co-worker's backside; (2) Chris Dreher received a warning for "possible workplace violence;" (3) Mr. Levar received a verbal warning for pushing another employee; (4) Shawn

Morrison received a warning for "horseplay" for placing co-workers in chokeholds and lifting up a female employee on to his shoulder and placing his hand on her buttock; (5) Crystal Campos was terminated for kicking an employee in the groin area because of "no tolerance for inappropriate touching in the workplace"; and (6) Edgar Carrillo-Nunez was terminated for "inappropriate touch[ing] of the backside of the co-worker" with a tool. *See* Exhibit 3.

The Court is not bound by Defendant's attempts to minimize the incidents involving the Caucasian employees, including pushing employees and putting employees in chokeholds, as "horseplay." As this Court stated in its Order on Defendant's Motion for Summary Judgment: "Whether the conduct engaged in by Mr. Levar and Mr. Morrison is of comparable seriousness to Plaintiff's conduct is a question for the jury to decide." [Doc. 59, MSJ Order, p. 8]. *See also Gordon v. United Airlines, Inc*., 246 F.3d 878 (7th Cir. 2001) (finding employees similarly situated where they engaged in the same conduct and plaintiff was terminated while white comparator received only a warning; although defendant suggested that the comparator's conduct was less intentional, that conclusion was for the trier of fact and not the court).

Also, the fact that some of the events occurred after Plaintiff's termination does not make the evidence inadmissible. In *Ansell v. Green Acres Contracting Co*., 347 F.3d 515, 524–25 (3d Cir.2003), the court considered the value of this type of evidence:

> Subsequent actions by an employer against co-workers may be less probative of an employer's intent than prior actions "because the logical relationship between the circumstances ... and the employer's decision to terminate is attenuated." *Coletti*, 165 F.3d at 777. That is not to say, however, that subsequent acts can have no probative value; they may still be relevant to intent. *Echeverri*, 854 F.2d at 645; cf. *Ryder v. Westinghouse Elec. Corp*., 128 F.3d 128, 132–33 (3d Cir.1997) (age-discriminatory comments made by CEO and other supervisors one year after plaintiff's termination were relevant to show managerial attitudes). A court should consider the passage of time between the other act and the act alleged to be discriminatory. There is a point at which a prior or subsequent act becomes so remote in time from the alleged discriminatory act at issue, that the former cannot, as a matter of l aw, be relevant to intent.

*Id*. at 524-25.  While some of the events occurred after Plaintiff's firing, they did not happen so far afterwards as to negate their probative value related to motive.  For example, Mr. Morrison's event happened only weeks after Plaintiff's termination.

Based on the above, Plaintiff has set forth sufficient evidence that there are enough common features between himself and the other employees to allow this evidence to be presented to the jury in this case.[3]

## ARREST AND PROSECUTION OF FRANK LEVAR

Mr. Levar's arrest and prosecution are relevant to the claims and admissible under F.R.E. 401 and 403.  Defendant acknowledges that it relied on the report from the Fort Morgan Police Department ("FMPD") in making its decision to termination Plaintiff and terminated Plaintiff 13 days after Mr. Levar was arrested.  *See* Exhibit 4.  More importantly, Defendant intends on arguing that Plaintiff was terminated because he was an aggressor and active participant in the assault.  *See* [Order MSJ, Doc. 59, p. 8].  Plaintiff's position is that he was a victim of an unprovoked attack. The fact Levar was arrested and later convicted in a jury trial is strong evidence to support Plaintiff's position.

Not surprisingly, Defendant does not object to introducing portions that it finds favorable, such as portions of audio interviews taken by the FMPD and transcripts, portions of the FMPD investigation report and a transcript from a hearing for the criminal trial.  Defendant cannot claim that other evidence related to the criminal case is unfairly prejudicial merely because it does not support Defendant's theory.   *United States v. Caraway*, 534 F.3d 1290,

---

[3] Defendant's concern regarding the risk of creating a mini-trial cannot serve as the basis to exclude other acts evidence.  *See Griffin v. Finkbeiner*, 689 F.3d 584, 600 (6th Cir. 2012) (stating that the danger of a mini-trial cannot serve as blanket grounds for exclusion" because doing so would tend to prevent any evidence of other acts even when closely related to the plaintiff's circumstances).  The evidence in this case is limited and unlikely to distract the jury or unduly prolong the trial.

1301 (10th Cir. 2008) ("Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case.") (*quoting United States v. Curtis*, 344 F.3d 1057, 1067 (10th Cir. 2003)).[4]

Any concerns about the risk of prejudice can be addressed with a limiting instruction addressing Defendant's concern that the jury could mistakenly give such evidence undue weight.

DATED this 24th day of June, 2020.

Respectfully submitted,

**BURMA LAW OFFICES, LLC**

*The original signature is on file at Burma Law Offices, LLC*

By:      /s/ Amy K. Burma
Amy K. Burma

ATTORNEY FOR PLAINTIFF

Amy K. Burma (#43261)
Burma Law Offices, LLC
1035 Pearl Street, Suite 325
Boulder, Co 80302
Ph/Fax (720) 464-5655
amy@burmalawoffices.com

---

[4] Evidence of the arrest and conviction are also relevant to pre-text as it relates to deficiencies in Defendant's investigation and Defendant's discriminator motive and intent. Defendant's policy was to conduct its own investigation, yet in this case it relied on the FMPD investigation and interviews. Despite the fact Defendant relied on the FMPD investigation, Defendant did not cooperate with the police. Det. Vosburg testified in the criminal case that Defendant was not cooperative, and he felt "hampered by [Defendant's] cooperation." See Exhibit 5. This evidence would also be relevant to punitive damages.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE** was served via electronic mail this 24th day of June, 2020, upon the following Attorney for Defendant:

William C. Brittan, #17643
Margaret R. Pflueger, #39780
270 St. Paul Street, Suite 300
Denver, CO 80206
Phone: (303) 322-3400
Fax: (303) 322-5800
Email: bbrittan@ckbrlaw.com
mpflueger@ckbrlaw.com