**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-CV00285-CMA-NRN

NICOLAS DONEZ,

        Plaintiff,

v.

LEPRINO FOODS COMPANY, a Colorado corporation
        Defendant.

---

**DEFENDANT LEPRINO FOODS COMPANY'S RESPONSE TO
PLAINTIFF'S MOTIONS *IN LIMINE***

---

Defendant Leprino Foods Company ("Leprino Foods"), through its undersigned counsel, herein responds to Plaintiff's Motions *in Limine* ("Motions") and states as follows:

**WORKERS' COMPENSATION**

"The primary justifications for the collateral source rule are that the defendant should not get a windfall for collateral benefits received by the plaintiff and that the defendant should not profit from benefits that the plaintiff has paid for himself." *McLean v. Runyon,* 222 F.3d 1150, 1156 (9th Cir. 2000). The collateral source rule does not apply in a situation where, as here, the defendant employer is the direct source of the workers' compensation benefits. *Id.* (holding that the district court did not abuse its discretion by reducing the plaintiff's damages for lost back and front pay by the amount of his workers' compensation benefits where the employer was a government agency which provided benefits directly without insurance); see also *McKenna v. City of Philadelphia,* 636 F. Supp. 2d 446, 457-58 (E.D. Pa., 2009) (workers' compensation benefits

could be deducted from a back pay award since the employer was self-insured and was therefore the sole source of the payment); *Miller v. Tyco Elecs., Ltd.*, 2012 U.S. Dist. LEXIS 164531 (M.D. Pa. 2012) (workers' compensation benefits should be deducted from a back pay award, because they are paid by the employer and are therefore not from a collateral source); *Russell v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh*, No. 02:06-cv-01668, 2009 U.S. Dist. LEXIS 18345 at * 6-7 (W.D. 2009) (concluding that workers' compensation payments which the plaintiff received during the relevant period do not fall under the collateral benefit rule and must be deducted from any back pay which the plaintiff may be awarded); 1 Dobbs, Law of Remedies § 3.8(2) (concluding that the collateral source rule does not apply when the benefit is derived from the defendant himself).

Here, the workers compensation benefits received by Plaintiff for his lost wages, amounting to approximately two-thirds of his salary, were paid directly and entirely by Leprino Foods. Although Leprino Foods has a workers' compensation insurance policy with Hartford, it has a $250,000 per claim deductible under the policy. Because Plaintiff's workers' compensation claim was less than Leprino Foods' deductible on its workers' compensation policy with Hartford, the amounts Plaintiff received from workers' compensation for wages were paid directly and entirely by Leprino Foods, not a collateral source. If the set-off is not allowed, Leprino Foods would have to pay Plaintiff twice for his lost wages; once through workers' compensation and again as back pay damages under Plaintiff's Title VII claim. Conversely, there will be no windfall to Leprino Foods if any damages awarded to Plaintiff for back pay are offset by the workers' compensation benefits Leprino Foods already paid Plaintiff to compensate him for his lost wages.

The cases relied on by Plaintiff, *Adamscheck v. Am. Family Mut. Ins. Co.,* 818 F.3d 576, 584 (10th Cir.),  *Jones v. Esurance Ins. Co.,* 2016 U.S. Dist. LEXIS 51585 at *2-3 (D.Colo. 2016) are distinguishable because each of these cases concerned a UIM claim where the workers' compensation damages the defendant sought to offset had been paid by a collateral source – a private, independent, insurance company -- not the defendant. *Combined Commc'ns Corp., Inc. v. Pub. Serv.Co.*, 865 P.2d 893, 902 (Colo. App. 1993) is equally inapposite in that the case specifically concerned workers' compensation death benefits received by widows of pilot and passengers, not lost wages and back pay.

Moreover, at the end of the day, Plaintiff's reliance on these cases to argue that Leprino Foods is not entitled to a set off is fundamentally flawed in that it fails to incorporate certain nuances within the Workers' Compensation Act.  Under the Workers' Compensation Act, payment by an insurer of Workers' Compensation benefits creates an assignment or subrogation right. C.R.S.§8-41-203(1)(c).  The assignment or subrogation right enables Workers' Compensation insurers to recover monetary proceeds from their claimants' tortfeasors. C.R.S. § 8-41-203(1)(b). On the flip side of this right, an injured claimant who elects to take workers' compensation and also recovers from a third party must then reimburse the workers compensation insurer for that subsequent recovery. *Tate v. Industrial Claim Appeals Office of State of Colo.,* 815 P.2d 15, 17 (Colo., 1991).  Due to the assignment or subrogated right, if Leprino Foods is not entitled to an offset, the Plaintiff would arguably be required to use a portion of any recovery to reimburse Leprino Foods – the payor – not Hartford for the workers' compensation benefits he

received. Under this scenario, the issue of duplicative damages would be moot, but the outcome is the same – Leprino Foods would not have to pay Plaintiff's lost wages twice.

## PLAINTIFF'S 2003 INCIDENT

Plaintiff seeks to bar the introduction of evidence relating to a situation in 2003 when Plaintiff confronted a co-worker, Melvin Muth, at work and cussed Mr. Muth out.[1] See portions of Plaintiff's deposition testimony attached hereto as Exhibit 1. Plaintiff claims that Leprino Foods' proposal to discuss this incident violates FRE 404(b), contending that because no "physical touching" occurred, there was no violation of Leprino Foods' Workplace Violence Policy.

Leprino Foods does not intend to offer evidence of Plaintiff's 2003 confrontation with Mr. Muth in order to argue that in this case Plaintiff acted in conformity with his previous actions. Instead, to the extent that Plaintiff contends that he was unaware of the relevant Leprino Foods' policies regarding workplace actions, the 2003 confrontation demonstrates that Plaintiff received a performance warning for his actions, and thus was aware of Leprino Foods' policies.

It is also interesting that Plaintiff seeks to bar the introduction of Plaintiff's verbal altercation with Mr. Muth while attempting to offer the same type of evidence in support of his claims. As reflected in Defendant's Motion in *Limine*, Plaintiff seeks to introduce evidence from his step-daughter, Hannah Abrego, that in 2016 Mr. Dreher yelled at her and was otherwise "mean" to Ms. Abrego. Plaintiff cannot have it both ways. If the 2003 situation is irrelevant because it is not in violation of the Workplace Violence Policy, then neither is the Ms. Abrego's situation.

---

[1] Plaintiff's Motion inaccurately states that the 2003 situation involved Howie Morrill. Plaintiff's confrontation and altercation with Mr. Morrill occurred later, and is not included as part of Plaintiff's Motion.

{00392697.DOCX / 1}                                4

## LEPRINO FOODS' STATISTICAL INFORMATION RELATING TO WORKERS AT THE FORT MORGAN PLANT

Plaintiff's Motion seeks to bar evidence that he himself requested Leprino Foods produce. Plaintiff's Motion fails to provide this Court with the appropriate procedural understanding for the Fort Morgan Self-Identification Data provided to Plaintiff at his request in this litigation. Leprino Food produced Steve Schmidt as a Rule 30(b)(6) witness in this case in response to Plaintiff's Fifth Amended Notice of Rule 30(b)(6) Deposition. A copy of this Notice is attached hereto as Exhibit 2. Exhibit A of the Notice includes the categories Plaintiff requested Mr. Schmidt address. Plaintiff agreed to accept the summary in response to the following paragraphs of the Notice:

4. Factual information relating to the race of all employees at the Fort Morgan Plant that were terminated from January 1, 2012 to the present.

5. Factual information relating to the race of all employees that were hired at the Fort Morgan Plant from January 1, 2012 to the present.

6. Factual information relating to the race of all employees at the Fort Morgan Plant that were hired from January 1, 2012 to the present.

In response to these requests, and by agreement of counsel, the Fort Morgan Self-Identification Race Data was produced by Mr. Schmidt and he answered questions relating to it at the time of his Rule 30(b)(6) deposition. Plaintiff, apparently, is unhappy with the results showing the large percentage of Hispanic workers at the Fort Morgan plant, and now seeks to bar this information. Plaintiff claims that this statistical information is not relevant or probative of any issues in the case. On the contrary, it is both relevant and probative. Plaintiff claims that Leprino Foods discriminates against Hispanics in its Workplace Violence Policy. The percentage of workers at the Fort Morgan plant, and the relative percentage of workers who were hired and

terminated in any given year, are extremely relevant to demonstrate that Leprino Foods does not discriminate against Hispanics. At a minimum, the percentage of Hispanics working at the plant is relevant and probative. *See e,g, Fallis v. Kerr-McGee Corp*., 944 F.2d 743, 746 (10th Cir. 1991) ("It is uniformly recognized that statistical data showing an employer's pattern of conduct toward a protected class can create [or defeat] an inference that an employer discriminated against individual members of the class."); *Bell v. EPA*, 232 F.3d 546, 552 (7th Cir. 2000) ("In conjunction with other evidence of disparate treatment, however, statistics can be probative of whether the alleged disparity is the result of discrimination.")

Plaintiff also contends that the Fort Morgan Self-Identification Race Data is essentially a Rule 1006 chart without the underlying information. However, Plaintiff never requested the underlying information. Instead, as indicated above, the chart was produced upon agreement of counsel in conjunction with the Rule 30(b)(6) deposition of Leprino Foods' representative, where Plaintiff had the opportunity to question Defendant's representative.

## JOINT EXHIBIT LIST

Plaintiff's Motion complains about certain exhibits proposed by Defendant. Plaintiff, apparently, argues that if Plaintiff proposes an exhibit, Defendant cannot propose an alternative exhibit. This is not an appropriate Motion in *Limine*. Additionally, pursuant to this Court's

Practice Standard 43.1B, all issues relating to the Exhibit List should be resolved at the Final Trial Preparation Conference.[2]

While Defendant does not believe it has to defend its exhibits in response to a Motion in *Limine*, the explanation for the exhibits objected to by Plaintiff are as follows:

**LEP0147**: This is a statement Plaintiff gave to Leprino Foods and was marked as a separate exhibit at his deposition. Defendant has designated this exhibit and that portion of Plaintiff's deposition discussing this statement, and therefore the exhibit needs to be separated out from any larger Exhibit which might incorporate it.

**LEP0219-0222**, **LEP0232-0235** and **DONEZ0043-0044**: These are three different reports from the Fort Morgan Police Department file regarding the incident  Plaintiff intends to offer the <u>entire</u> Police Report as an exhibit, but Defendant objects to the entire report. Defendant intends to utilize these individual Police Reports for purposes of the examination of Plaintiff and any Fort Morgan Police Officers who testify.

## **DOCUMENTS NOT REQUESTED**

Plaintiff complains that certain documents included in the draft Joint Exhibit List have not been previously produced. Again, objections to Defendant's proposed exhibits in the draft Exhibit List should be resolved at the Final Trial Preparation Conference, not in a Motion in *Limine*.

---

[2] The Joint Exhibit List attached to Plaintiff's Motion is a draft, which has been amended since the filing of Plaintiff's Motion.

The documents at issue relate to other incidents that Plaintiff claims are relevant to Plaintiff's allegation that Leprino Foods discriminates against Hispanics in the enforcement of its Workplace Violence Policy. Leprino Foods has moved to bar the introduction of these other incidents as irrelevant, not probative and unduly prejudicial. See Leprino Foods Motion in *Limine #1*.

Moreover, Plaintiff fails to advise the Court of any request by Plaintiff for the documents in issue. As reflected in Defendant's Motion in *Limine*, Mr. Carrillo-Nunez was terminated due to his violation of Leprino Foods' Harassment Prevention Policy, and not the Workplace Violence Policy. Therefore, Leprino Foods believes that these records are irrelevant, but in any event, have never been requested by Plaintiff. The same is true for the documents relating to Ms. Abrego, who claims that she was yelled at by Chris Dreher. The documents relating to Ms. Abrego do not even address the Dreher situation, and are irrelevant unless Plaintiff attempts to expand the areas of testimony of Ms. Abrego.

Wherefore, Defendant Leprino Foods Company requests that this Court deny Plaintiff's Motions in *Limine*.

Dated this 24th day of June, 2020.

                                      **CAMPBELL KILLIN BRITTAN & RAY, LLC**

                                      By: *s/ William C. Brittan*
                                      William C. Brittan, #17643
                                      Margaret R. Pflueger, #39780
                                      270 St. Paul Street, Suite 300
                                      Denver, CO 80206
                                      Phone: (303) 322-3400
                                      Fax: (303) 322-5800
                                      Email: bbrittan@ckbrlaw.com
                                      mpflueger@ckbrlaw.com


**CERTIFICATE OF SERVICE**

       I, the undersigned, certify that on this 24th day of June, 2020, a true and correct copy of the foregoing **DEFENDANT LEPRINO FOODS COMPANY'S RESPONSE TO PLAINTIFF'S MOTIONS *IN LIMINE*** was filed and served through the CM/ECF system on the following:

Amy Burma
Burma Law Offices, LLC
1035 Pearl Street, Suite 325
Boulder, CO 80302
amy@Burmalawoffices.com

Ralph E. Lamar
8515 Braun Loop
Arvada, CO 80005
ralphlamar@ymail.com

*Attorneys for Plaintiff*

                                          *s/Andrea Davis*
                                          *Andrea Davis*